**Debannette RITTER, Appellant (Defendant),**

v.

**Harold RITTER, Appellee (Plaintiff).**

No. 99–71.

Supreme Court of Wyoming.

Nov. 3, 1999.

Representing Appellant. Tina N. Hughes, Cheyenne, WY., Argument by Ms. Hughes.

Representing Appellee. Harold Ritter, Pro Se, Union City, GA., Argument by Mr. Ritter.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellant Debannette Ritter (Mother) claims the district court erred in refusing to exercise jurisdiction over her motion to modify the custody awarded to Appellee Harold Ritter (Father). The district court determined it no longer maintained jurisdiction because both parents had left Wyoming. In the alternative, the district court found that if Wyoming's jurisdiction continued, it would decline to exercise jurisdiction because the Georgia courts were the most appropriate forum. We affirm the district court's discretionary determination to refuse to exercise the jurisdiction of the Wyoming courts.

## ISSUES

Appellant (Mother) presents two issues for review.

1. Did the trial court abuse its discretion in dismissing Appellant's Motion to Change Custody?

2. Did the trial court abuse its discretion in dismissing Appellant's Motion to Show Cause and for Temporary Custody?

Appellee (Father) presents a single issue:

1. Did the trial court abuse its discretion in granting Appellee's Motion to Dismiss Change of Custody?

## FACTS

The parties were divorced on August 11, 1995. Over Mother's objection, Father was awarded primary custody of their three children and relocated with the children to Georgia in 1996. On August 18, 1998, Mother filed a Motion To Change Custody, followed by a Motion to Show Cause and for Temporary Custody, filed September 2, 1998. Mother alleged that Father regularly interfered with Mother's visitation and that the children reported circumstances which generated serious concerns regarding their liv-

ing conditions in Georgia. Mother also claimed Father failed to timely retrieve the children when the summer visitations ended, including the current visitation period. Upon being served with Mother's motion, Father immediately came to Wyoming and took the children back to Georgia. Father then responded with a Motion to Dismiss, claiming the children resided in Georgia, and therefore, jurisdiction over issues regarding the children rested with the Georgia courts.

An evidentiary hearing on the various motions was held on October 28, 1998, before the Laramie County court commissioner. No transcript is available due to a malfunction in equipment. The summary of evidence and documents in the record, however, demonstrate that the children had lived in Georgia for two and one-half years, attended school in Georgia, and received medical care in that state. Evidence was also submitted showing the dismissal of a claim against Mother by Wyoming Child Support Enforcement due to the State's belief that Mother no longer lived in Wyoming.

On the other hand, Mother claimed that she had been, and continues to be, a resident of Wyoming. While she admitted temporarily living in Texas, Nebraska, and Georgia, Mother stated that she had continued to use her parents' address in Wyoming as her permanent residence, had never obtained a driver's license in another state, and had always considered herself a resident of Wyoming. She argued that jurisdiction in Wyoming was proper because there was no action pending in Georgia, the children's grandmother and mother were in Wyoming, and the children had spent the entire summer in Wyoming.

The district court granted Father's Motion to Dismiss, finding that the exclusive jurisdiction of the Wyoming court ended when all the parties and the children were no longer in Wyoming. The district court further held that even if the court maintained any subject matter jurisdiction, it would decline jurisdiction and defer to the jurisdiction of the Georgia courts. This timely appeal followed.

1. Wyo. Stat. Ann. § 20–5–104 (LEXIS 1999) is the provision governing the jurisdiction of Wyoming courts in child custody proceedings and

## STANDARD OF REVIEW

Whether or not a court has subject matter jurisdiction is a question of law to be reviewed *de novo*. *Weller v. Weller*, 960 P.2d 493, 494 (Wyo.1998). However, "[a] court which has jurisdiction under [the Uniform Child Custody Jurisdiction Act] to make an initial decree or a modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Wyo. Stat. Ann. § 20–5–108(a) (LEXIS 1999). Thus, whether a court declines to exercise jurisdiction in a custody matter is a question left to the discretion of the court, and we review the court's decision to determine whether there has been an abuse of that discretion.

## DISCUSSION

The Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A, constitutes federal preemption of custody matters. *Marquiss v. Marquiss*, 837 P.2d 25, 38 (Wyo. 1992). Consequently, a jurisdictional analysis necessarily begins with its provisions. 28 U.S.C.A. § 1738A(c) (West 1994) provides:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if -

(1) such court has jurisdiction under the law of such State [1]; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A),

contains language similar to that of its federal counterpart.

and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse; (D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

In turn, subsection (d) states:

(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met *and such State remains the residence of the child or of any contestant.*

28 U.S.C.A. § 1731A(d) (West Supp.1999) (emphasis added). While conceding that Wyoming is no longer the "home state"[2] of the children, Mother argues that the Wyoming court retains jurisdiction under 28 U.S.C.A. § 1738A(d). She claims the district court erred in its finding that its jurisdiction had ended when she left Wyoming. We agree.

■ The concept of residence was most recently discussed in *McDougall v. McDougall*, 961 P.2d 382, 384 (Wyo.1998), where we stated:

The term "resided" implicates the concept of domicile. Once a domicile is established, it continues until a new one is actually acquired. *Duxstad v. Duxstad*, 17 Wyo. 411, 100 P. 112, 114 (1909). A change of address alone does not amount to a change in domicile. Such change must be with the intention of making that place the permanent residence. *Id.* 100 P. at 114. This intention, or *animus manendi*, has been defined as:

[T]he intent to reside in the new place permanently or indefinitely, or to make the new place one's permanent home, or as the absence of an intention to live elsewhere. It has also been said that there must be (1) an intention to abandon the old domicile, and (2) an intention to acquire a new one.

24 Am.Jur.2d *Divorce and Separation* § 245 (1983) (footnotes omitted).

Even though a party may be absent from the state of original domicile, that domicile continues until a new one is adopted. See *Duxstad*, 100 P. at 114.

Nothing in the limited record before us can support a finding that Mother's temporary absences from Wyoming constituted the adoption of a new residence. Although she was employed in Texas for one to two months, she used her parents' Wyoming address and lived with an aunt. She was also employed in Georgia for a month and applied for an apartment in a complex there. However, she did not move in, and instead, lived in a hotel before returning to Wyoming. The motion to dismiss relied on by Father does not state how or why the petitioner concluded that Mother was no longer a resident. Consequently, there is no objective evidence contradicting her testimony that she considered herself a resident of Wyoming at all times. As a result, the district court erroneously determined that it no longer maintained jurisdiction.

■ We do not find error, however, in the district court's decision to decline to exercise

---

**2.** 28 U.S.C.A. § 1738A(b)(4) defines "home State" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons."

its jurisdiction. Wyo. Stat. Ann. § 20–5–108(c) (LEXIS 1999) provides guidance to the district court in its decision to exercise jurisdiction:

> (c) In order to determine whether it is an inconvenient forum, the court shall consider whether it is in the interest of the child that another state assume jurisdiction and for this purpose may take into account the following factors, among others:
>
> > (i) Whether another state is or recently was the child's home state;
> >
> > (ii) Whether another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;
> >
> > . . . .
> >
> > (v) Whether the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in W.S. 20–5–102.

Here, there is no doubt that Georgia was the children's home state at the time Mother filed her motion to modify custody. Father submitted substantial documentation from the children's health care providers and teachers demonstrating that the children are closely connected to their Georgia residence. Moreover, the exercise of jurisdiction would contravene the purpose of Wyo. Stat. Ann. § 20–5–102(a)(iii) (LEXIS 1999), which seeks to:

> [A]ssure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state[.]

The children have lived in Georgia for over two years. The allegations lodged by Mother relate to the children's living conditions in that state. Therefore, it is clear that Georgia is the location of significant evidence concerning the children's "care, protection, training, and personal relationships."

Mother attempts to separate the alleged error in the district court's dismissal of her motion to modify and the dismissal of her motion to show cause and for temporary custody. She contends that, under our holding in *Marquiss, supra,* the district court should have retained jurisdiction to enforce its original order. Arguing that the district court committed an error of law in failing to address individually the motion to show cause, Mother concludes the matter should be remanded. We find this an unnecessary exercise. Mother's motion to show cause also requested temporary custody based upon the same allegations found in her motion for modification. The same reasoning applied by the district court to the motion to modify custody is equally applicable to Mother's motion for temporary custody. We, therefore, find no merit in Mother's second issue.

### CONCLUSION

The evidence presented to the district court cannot support a determination that the Wyoming courts no longer maintained jurisdiction due to Mother's temporary absences from the state. However, the court properly exercised its discretion in declining jurisdiction due to the children's significant connection with their current home state, Georgia. The dismissal of Appellant's Motion for Modification and Motion to show Cause and for Temporary Custody is affirmed.