**Melody Ann STEELE, Appellant (Plaintiff/Respondent),**

v.

**Robert Boyd NEEMAN, Appellee (Defendant/Petitioner).**

No. 99–283.

Supreme Court of Wyoming.

June 7, 2000.

Representing Appellant: Philip White Jr., Laramie, Wyoming. Argument presented by Mr. White.

Representing Appellee: Daniel B. Bailey of Lubnau, Hand, and Bailey, LLC, Gillette, Wyoming. Argument presented by Mr. Bailey.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Melodie Ann Steele (Mother) appeals the exercise of jurisdiction by the district court over an interstate child custody/visitation dispute. Mother argues that the Wyoming court no longer retained jurisdiction, or, at the least, that it should have declined to exercise its discretion and deferred jurisdiction in favor of the courts of the State of New York. In addition, Mother challenges the district court's modification of the terms of visitation. We reverse and remand.

## ISSUES

Mother presents these statements of the issues presented for review:

I. Considering that the child has lived in New York since 1990 and has not been in Wyoming since 1997, did the Wyoming district court in 1999 meet both of the requirements of 28 U.S.C. § 1738A(d), including the requirement that the Wyoming court still have jurisdiction under W.S. § 20-5-104(a), so as to have continuing jurisdiction to make a child custody/visitation determination or modification?

II. If so, was it an abuse of discretion for the district court to exercise that jurisdiction instead of deferring to the courts of New York?

III. If the Wyoming court had jurisdiction and properly exercised it, did the district court properly find that it would be in the best interests of the child to fly unaccompanied for his visitations in Wyoming?

Appellee Robert Boyd Neeman (Father) responds with the following statement of the issues:

A. Did the District Court abuse its discretion by extending continuing jurisdiction to modify its child custody orders?

B. Was the Appellant's Notice of Appeal timely filed?

C. Did the District Court abuse its discretion by ruling that the child should fly for visitation as an unaccompanied minor?

## FACTS

Mother and Father were married in Colorado on August 1, 1979. Exactly eleven

years later, Mother filed for divorce in Campbell County, Wyoming. The marriage produced one child, born on May 22, 1989. Shortly after filing the action for divorce, Mother and child moved to New York State. Eventually, the parties entered into a settlement agreement resolving issues relating to child custody, support, and visitation. The settlement agreement was incorporated into the Decree of Divorce, which was issued on June 7, 1991. For purposes of the current proceedings, the relevant portion of the Decree of Divorce granted Mother custody of the child in New York while providing for liberal visitation rights to Father including provisions for allowing the child to spend vacations in Wyoming.

In what would become a pattern in the parties' relationship, Father filed a show cause motion in the Wyoming district court on October 3, 1991, claiming that Mother had breached the terms of the settlement agreement and the divorce decree regarding the terms of visitation. The parties resolved the dispute by entering into a stipulation on January 2, 1992. In response, the district court issued an Amended Decree of Divorce on January 6, 1992, adopting the terms of the stipulation.

The dispute then moved to the courts of New York State. In August of 1994, Mother filed a motion to modify visitation in the family court of Chautauqua County, New York. Father appeared with counsel in the matter, apparently for the purpose of contesting the jurisdiction of the New York court. Nevertheless, the parties were able to reach an accommodation, which was memorialized in a settlement agreement. The agreement was subsequently accepted by the New York court and incorporated into an order issued on August 21, 1995. The same scenario was repeated in 1996 when Mother filed a show cause order in the New York family court, which resulted in an oral stipulation again modifying visitation. The New York court issued an order on August 1, 1996, encapsulating the new agreement.

In the action which precipitated the events leading to this proceeding, Father filed a petition to modify child support in the Wyoming district court on February 19, 1998.

Mother countered with two motions, one filed in the Wyoming court and the other filed in New York. Mother's Wyoming motion sought dismissal of Father's action based on contentions that the courts of New York had assumed jurisdiction over support matters. The motion filed in New York by Mother sought to have that court modify the terms of child support and visitation. Subsequently, Father filed an amended petition in the Wyoming court, which added issues of child custody and visitation to those regarding support raised in the initial petition.

Meanwhile, on June 23, 1998, the New York court ruled that it did not have jurisdiction over child support issues. New York, however, still claimed jurisdiction over the visitation issue. In a July 14, 1998, letter to the New York court, the Wyoming judge acknowledged that New York was the home state of the child but asserted that Wyoming had still retained jurisdiction. The New York court replied with a letter the very next day in which it reiterated its belief that New York was the home state of the child, giving it jurisdiction over custody and visitation issues. In a subsequent letter on July 15, 1998, the New York court also pointed out that it had already issued at least two orders on visitation and that the latest filing in New York on that subject preceded the Father's Wyoming filing. The record does not disclose any other communications between the two jurisdictions.

The New York court issued a decision on February 17, 1999, ostensibly modifying visitation. The relevant part of that order required Father to accompany the child on flights to and from his visitations to Wyoming. Meanwhile, in an April 1, 1999, order, the Wyoming district court found that it had "continuing, exclusive jurisdiction over issues related to child custody and child support." A hearing was subsequently held on the merits of Father's petition. A decision letter was issued on June 28, 1999, modifying visitation. The Wyoming order conflicted with the New York order in that it allowed the minor child to travel by air to and from Wyoming unaccompanied. Mother now appeals to this Court, challenging the assertion of jurisdic-

tion by the Wyoming court and its decision to allow the child to travel on his own.

## STANDARD OF REVIEW

 The resolution of this case depends on the interpretation of statutory language:

"We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making ' "an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." ' * * * "

* * * "When the court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction." * * * If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent.

*State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn*, 951 P.2d 373, 376 (Wyo.1997) (*quoting State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994) and *Lancto v. City of Rawlins*, 892 P.2d 800, 802–03 (Wyo.1995)).

*Basin Electric Power Co-Op. v. Bowen*, 979 P.2d 503, 506 (Wyo.1999). In child custody proceedings, the determination of whether to exercise jurisdiction or to defer to the courts of another state is reviewed for an abuse of discretion. *Ritter v. Ritter*, 989 P.2d 109, 111 (Wyo.1999).

## DISCUSSION

Initially, we must address a contention raised by Father that Mother's appeal was not timely filed. Father insists that the April 1, 1999, district court order which stated that "**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this Court has continuing, exclusive jurisdiction over matters related to child support and child custody between these parties and their minor child," was a final, appealable order under W.R.A.P. 1.05 (LEXIS 1999). (Emphasis in original.) Since Mother did not file her notice of appeal until September 21, 1999,

well outside the allowable 30–day time period, Father contends that the appeal should be dismissed pursuant to W.R.A.P. 1.03 (LEXIS 1999). Mother counters that the April 1, 1999, decision was not a final, appealable order because it did not resolve all outstanding issues between the parties. Indeed, Mother notes that the very order cited by Father actually sets a hearing date on the substance of Father's motion to modify visitation.

 We agree with Mother. An appealable order is "[a]n order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment[.]" W.R.A.P. 1.05(a). "[A] judgment or order which determines the merits of the controversy and leaves nothing for future consideration is final and appealable, and it is not appealable unless it does those things." *Public Service Commission v. Lower Valley Power*, 608 P.2d 660, 661 (Wyo. 1980). The resolution of the jurisdictional issue by the district court did not determine the merits of the controversy. This is self-evident from the fact that the very order cited by Father also sets the merits of the controversy—his petition to modify visitation—for hearing. Since that order did not determine the merits of the controversy and resolve all outstanding issues, it was not a final, appealable order under W.R.A.P. 1.05(a). The final, appealable order in this matter was the one issued by the district court fully disposing of Father's modification petition on the merits. Since Mother's notice of appeal was timely filed after the issuance of that order, Father's argument is without merit.

 The determinative issue in this case is one of jurisdiction. Whether a court has subject matter jurisdiction or not is a question of law to be reviewed *de novo*. *Ritter*, 989 P.2d at 111. Since Father still resides in this state, Wyoming has retained jurisdiction as the original decree state. *Marquiss v. Marquiss*, 837 P.2d 25, 43 (Wyo.1992). The district court's order exercising jurisdiction based on its "continuing, exclusive jurisdiction over matters related to child support and child custody between these parties and their minor child," clearly implies that this

was the underlying rationale for the court's assertion of jurisdiction.

■ However, it is also clear from the record that the courts of New York also had jurisdiction over this matter as the "home state" of the child. The Parental Kidnapping Prevention Act (PKPA) provides:

(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State[.]

28 U.S.C.A. § 1738A(c)(2)(A) (West 1994 and 2000 Cum.Supp.). Both Wyoming and New York law parallel this provision. See Wyo. Stat. Ann. § 20–5–104(a)(i) (LEXIS 1999) (Uniform Child Custody Jurisdiction Act) and N.Y. Domestic Relations Law § 75–d.1(a) (McKinney 1999). The term "home state," as used in § 1738A(c)(2)(A), means "the State in which, immediately preceding the time involved, the child lived with his parents, a parent or a person acting as parent, for at least six consecutive months, and ... [p]eriods of temporary absence of any of such persons are counted as part of the six-month or other period[.]" 28 U.S.C.A. § 1738A(b)(4) (West 1994 and 2000 Cum. Supp.); see also Wyo. Stat. Ann. § 20–5–103(a)(v); and N.Y. Domestic Relations Law § 75–c. 5. The test to determine a child's home state is mechanical in nature: If, at the time of the commencement of the proceedings, the child or a parent has lived in a state for six months, then that state has jurisdiction as the "home state." The term "at the time of commencement of the proceeding" refers to the period immediately preceding the filing of the subject action. See Tufares

v. Wright, 98 N.M. 8, 644 P.2d 522, 524–25 (1982) ("Home state" under the PKPA); Henricks and Henricks, 115 Or.App. 718, 839 P.2d 766, 768 (1992) ("Home state" under UCCJA); State in Interest of D.S.K., 792 P.2d 118, 125 & fn. 6 (Utah App.1990) ("Home state" under UCCJA); and Mott for Rivazfar v. Rivazfar, 236 A.D.2d 819, 653 N.Y.S.2d 760, 762 (1997), affirmed, 91 N.Y.2d 856, 668 N.Y.S.2d 551, 691 N.E.2d 623. Here, it is clear that under any of the laws cited above, New York is the "home state" of the child: The child has lived continuously in that state since shortly after his birth in 1989.

■■ This case, then, presents a situation of concurrent jurisdiction. The PKPA gives primacy to the original decree state. Marquiss, 837 P.2d at 37–38. That primacy, however, is not absolute:

Although it is clearly recognized that the PKPA amended the UCCJA by creating a decree forum state predominance, [Mitchell v. Mitchell, 437 So.2d 122 (Ala.Civ.App. 1982) ], it should not be considered that for modification, Wyo.Stat. § 20–5–107 is rendered completely ineffective. Of even more significance, Wyoming jurisdiction as the decree court in seeking to remain informed can elect to decline to exercise jurisdiction under Wyo. Stat. § 20–5–108 in meeting the alternative condition of 28 U.S.C. § 1738A(f)(2) (declination to exercise jurisdiction to modify or by yielding to the new home state to enforce).

The courts have uniformly affirmed a trial court discretion to yield jurisdiction to a present home state, whether based on PKPA primacy decree jurisdiction, Murphy v. Woerner, 748 P.2d 749 (Alaska 1988), or UCCJA concurrent jurisdiction. Zellat v. Zellat, 351 Pa.Super. 623, 506 A.2d 946 (1986) (where Pennsylvania yielded to a mother's new home state in Tennessee). There is also authority that even with jurisdiction as the decree state, the court should, at least initially, yield to the present home state. Schlumpf v. Superior Court of Trinity County, 79 Cal.App.3d 892, 145 Cal.Rptr. 190 (1978). For a "best interest consideration," see Clark v. Superior Court In and For Mendocino County,

73 Cal.App.3d 298, 140 Cal.Rptr. 709 (1977). A contrary result to find abuse of discretion results if the trial court decision was apparently based on jurisdiction instead of discretion. *In re Marriage of McEvoy*, 414 N.W.2d 855 (Iowa App.1987); *In re Marriage of Corrie*, 32 Wash.App. 592, 648 P.2d 501.

*Marquiss*, 837 P.2d at 43–44 (footnotes omitted). Thus, even in cases where Wyoming is the original decree state, when the issue of concurrent jurisdiction is raised, the court has the duty to make a determination whether to exercise its discretion and retain jurisdiction over the matter or to defer to the courts of the other state. If a court retains jurisdiction solely on the grounds that it issued the original decree, then it has abused its discretion: The existence of jurisdiction is not determinative of whether that jurisdiction should be exercised under the circumstances of a particular case.

■■■■ The only basis appearing in the record in support of the district court's exercise of jurisdiction is its statement that it has "continuing, exclusive jurisdiction." The import of that statement is that the district court exercised jurisdiction based solely on its status as the issuer of the original decree. This is insufficient to justify exercising jurisdiction in a situation where concurrent jurisdiction exists. *Marquiss*, 837 P.2d at 44. The exercise of jurisdiction based solely on the court's status as the original decree jurisdiction is an abuse of discretion because the court has, in fact, failed to exercise any discretion. This constitutes reversible error.

■■■■ Upon remand, the district court should engage in the analysis set forth in Wyoming's UCCJA, Wyo. Stat. Ann. §§ 20–5–101 to –125 (LEXIS 1999). If a court determines that concurrent jurisdiction exists, a decision to exercise jurisdiction or not will be guided by the principles set forth in § 20–5–108(c) [1] and the purposes behind the UCCJA set forth at § 20–5–102 [2]. *Ritter*, 989 P.2d at 112–13. The court shall make findings on the record consistent with the factors set forth in those two statutes. A

---

1. **20–5–108. Court may decline to exercise jurisdiction.**

 . . . .

 (c) In order to determine whether it is an inconvenient forum, the court shall consider whether it is in the interest of the child that another state assume jurisdiction and for this purpose may take into account the following factors, among others:

 (i) Whether another state is or recently was the child's home state;

 (ii) Whether another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

 (iii) Whether substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

 (iv) Whether the parties have agreed on another forum which is no less appropriate; and

 (v) Whether the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in W.S. 20–5–102.

2. **20–5–102. Purpose.**

 (a) The general purposes of this act are:

 (i) To avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

 (ii) To promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

 (iii) To assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

 (iv) To discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

 (v) To deter abductions and other unilateral removals of children undertaken to obtain custody awards;

 (vi) To avoid relitigation of custody decisions of other states in this state insofar as feasible;

 (vii) To facilitate the enforcement of custody decrees of other states;

 (viii) To promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

 (ix) To make uniform the law of those states which enact it.

 (b) The provisions of this act shall be construed to promote the general purposes stated in this section.

failure to include the reasoning behind a decision whether to exercise jurisdiction or not is an abuse of discretion. If we review a district court's discretionary ruling without knowledge of the court's underlying rationale, then our conclusions as to the reasons behind the district court's decision are merely speculation. In order for any review of a discretionary ruling to be meaningful, we must know the underlying basis for the district court's action.

■ Furthermore, the UCCJA provides guidance for those situations, such as exists here, where proceedings concerning the same child are pending in another jurisdiction. Wyo. Stat. Ann. § 20–5–107(c)[3]. One of the central purposes of the UCCJA is to prevent the very result which obtained in this case: Two different custody orders relating to the same child issued concurrently by two separate jurisdictions. *See* Wyo. Stat. Ann. § 20–5–102(a). When a court of this state is confronted with the fact that a similar proceeding is pending in another jurisdiction, it shall stay the proceeding and communicate with the other court in an attempt to ensure that the issues are litigated in the most appropriate forum. Wyo. Stat. Ann. § 20–5–107(c). We reiterate what we have previously stated:

> Interstate jurisdictional cooperation should be a primary effort before any actual modification of the visitation decree or general custody change as a last answer is undertaken.

*Marquiss,* 837 P.2d at 43. (citations and footnote omitted). We acknowledge that there may be instances where the attempts to communicate with the other court to resolve the matter may be ineffective, and that may very well have been the case here. However, the only evidence in the record is the correspondence between the Wyoming and New York courts, which only illuminates the nature of the dispute but does not inform us of what steps, if any, were taken to resolve it. Again, for there to be a meaningful review, we must know what actions the district court took to resolve the controversy in order to determine whether there was an abuse of discretion by the district court in its decision to modify the visitation decree without reaching a resolution with the other court. Therefore, in addition to the findings required above, a court shall also include findings and conclusions relating to the resolution of jurisdictional conflicts in those instances where a parallel proceeding is pending in the courts of another state.

## CONCLUSION

When the possibility of concurrent jurisdiction is raised in a child custody dispute, the district court should initially make a determination if the other state does in fact possess jurisdiction under the PKPA. If the other state can legitimately exercise jurisdiction over the children at issue, then the court should proceed to analyze the facts of the case in light of the provisions of the UCCJA; and, similarly, when another proceeding is pending in another state court, then the Wyoming court should communicate with it in an effort to determine which court would be the appropriate forum for resolution of the dispute. The findings and conclusions of the court should be placed on the record. Failure to adhere to this procedure constitutes an abuse of discretion.

We reverse and remand this matter to the district court for resolution in accordance with this opinion.

---

3. **20–5–107. Exercise of jurisdiction by court in this state; proceedings in other states.**

. . . .

(c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before this court assumed jurisdiction, the court shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that informa-

tion be exchanged in accordance with W.S. 20–5–120 through 20–5–123. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of this fact. If the court is informed that a proceeding was commenced in another state after this court assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the most appropriate forum.