2004 WY 18

**In the Interest of KRA, minor child:**

**CAA, n/k/a CAF, Appellant (Respondent),**

v.

**ZWA, Appellee (Respondent).**

**No. C–03–6.**

Supreme Court of Wyoming.

March 4, 2004.

Representing Appellant: Michele J. Neves, Casper, Wyoming.

Representing Appellee: James A. Hardee, Douglas, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1] KRA was born to ZWA (Father) and CAF (Mother), an unmarried couple who

separated shortly thereafter. This case began as an action to establish paternity. Paternity was established and shared custody, alternating weekly, was ordered. Mother appeals, claiming that the district court's findings of fact are insufficient and unsupported by the record, and that shared custody is not in the child's best interests. We will affirm.

## ISSUES

[¶ 2] Mother presents the following issues:

I. Whether the trial court failed to make specific findings of fact and conclusions of law pursuant to Rule 52 of the Wyoming Rules of Civil Procedure.

II. Whether the trial court's decision was contrary to the evidence.

III. Whether the trial court's decision was in the best interests of the minor child.

Father raises two issues:

1. Is the January 31, 2003 order of the district court, which continues the temporary order issued March 4, 2002, an appealable order as required by Wyoming Appellate Rules 1.04 and defined by Wyoming Appellate Rule 1.05?

2. If the order is appealable, did the trial court abuse its discretion in ordering continued shared custody?

## FACTS

[¶ 3] Mother and Father met while he was finishing his senior year of high school. They dated for a time and Father then moved into the trailer where Mother and her daughter from a previous marriage lived. Shortly thereafter, Father left for the National Guard and Mother moved out of the trailer into her parents' home. Mother then contacted Father and informed him that she was pregnant. Upon returning from his service with the National Guard, Father moved in with Mother and her parents. After living with Mother's parents for a time, the couple, along with Mother's daughter, moved to Wright, where KRA was born. Three months later, Mother left Wright with the two children and returned to her parents' home in Douglas. After a failed attempt at reconciliation, Mother and Father went their separate ways. Father purchased a home in Douglas and obtained employment as a "hot oiler" in an oil field, and Mother married and returned to Wright, where her new husband worked and had a home.

[¶ 4] In August of 2001, the Department of Family Services filed a paternity action. After genetic testing confirmed Father's paternity, he filed a Petition to Establish Custody and Visitation. On March 4, 2002, a custody and support hearing was held. Because Mother appeared *pro se*, the district court stayed the proceedings to allow Mother to obtain counsel and entered a temporary order for custody and support. The temporary order directed Father to pay $137.50 per month in child support, and prescribed shared custody in alternating weeks.

[¶ 5] This order remained in effect until December 12, 2002, when the parties appeared again. Both parties argued that they should be awarded primary custody. Mother contended that as a stay-at-home-mom she was better suited to care for KRA than Father, whose employment required him to leave KRA with a babysitter. Mother also argued that the shared custody arrangement is difficult for KRA because KRA and Mother's other daughter have bonded and the children are upset when they are apart. Finally, Mother expressed concern that Father did not properly attend to KRA's medical needs and that he returned her from visits dirty, hungry, thirsty, with smelly hair and dirty fingernails, and without proper clothing for cold weather.

[¶ 6] Father urged the district court to award him primary custody, claiming that if Mother were awarded sole custody, she would attempt to deny him visitation. Father claimed that Mother had encouraged her other daughter to disparage her father, and that Mother had influenced her other daughter to become estranged from her father. Father also stated that he worried Mother would tell KRA things that were not true, causing her to be "confused and emotionally and mentally unstable...." Father also indicated that Mother had not finished high school, and expressed concern that she

would not properly stress the importance of education.

[¶ 7] At the end of the hearing, the district court requested that the parties submit findings of fact and conclusions of law, which they did. On January 31, 2003, the district court issued its Order for Custody and Visitation with Findings of Fact and Conclusions of Law. The order briefly outlined the relevant facts, stated the parties' respective strengths and weaknesses with regard to parenting, and then concluded:

1. Neither party is clearly more or less capable of providing for [KRA] than the other. [Father] likely would provide a better atmosphere for [KRA] to have a relationship with both her parents, but his work schedule would require him to rely significantly on babysitters. [Mother] is able to provide personal care for [KRA], and [KRA] would live with her sister in [Mother's] custody. However, [Mother] may deprive her daughter of a complete, emotionally secure relationship with her father.

2. Each party should complete a co-parenting class within sixty (60) days of the date of this decision.

3. [KRA] has been able to maintain a good relationship with both of her parents and her sister under the existing shared custody arrangement. The shared custody arrangement meets [KRA's] needs better than sole custody with either parent would.

4. It is in [KRA's] best interest that the current Temporary Order establishing joint/shared custody be continued until three months prior to [KRA's] eligibility to enter Kindergarten in the school district of either parent. The time for an exchange of custody should be modified to 3:00 p.m. on Sunday.

5. The existing child support computations are accurate and should be continued.

Mother appeals from this order.

## STANDARD OF REVIEW

We have previously reiterated the well recognized standard of review for custody determinations:

"Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. 'We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.' *Fink* [*v. Fink*], 685 P.2d [34,] 36 [ (Wyo.1984) ]."

*Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo. 1998). . . . Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Pace v. Pace,* 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (2001); *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998).

"Our review entails evaluating the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. We cannot sustain findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. *RDS v. GEMN,* 9 P.3d 984, 986 (Wyo.2000)."

*Pace,* at ¶ 10.

*Produit v. Produit,* 2001 WY 123, ¶ 9, 35 P.3d 1240, 1242–43 (Wyo.2001).

## DISCUSSION

### IS THIS AN APPEALABLE ORDER?

[¶ 8] Initially, we must address Father's contention that the district court's order is not an appealable order as defined in W.R.A.P. 1.05. Father takes issue with the following language of the order: "that the Temporary Order for custody entered in this case in March, 2002, is adopted and continued until three (3) months before [KRA] is

eligible to begin Kindergarten in the school district of either parent, provided, however, that custody exchanges shall occur at 3:00 p.m. on Sunday." He contends that this order merely continues the temporary order and sets a determinable time for a final order to be entered.

[¶ 9] The pertinent language of W.R.A.P. 1.05 reads: "An appealable order is: (a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment...." We applied this section in *Steele v. Neeman*, 6 P.3d 649, 653 (Wyo.2000). There, the parties were attempting to modify a divorce decree. Because the mother had moved with the child to New York, subject matter jurisdiction was a concern. *Id.* at 652. Prior to a hearing on the merits, the district court issued an order establishing subject matter jurisdiction. *Id.* After the hearing on the merits, the mother appealed the court's prior order establishing jurisdiction. *Id.* The father claimed that the appeal was untimely, asserting that the order was an appealable order under W.R.A.P. 1.05, and since mother filed her notice outside the allowable thirty-day time period, her appeal should be dismissed. *Steele*, 6 P.3d at 653. We concluded that the order was not appealable under W.R.A.P. 1.05. *Steele*, 6 P.3d at 653. We stated:

> The resolution of the jurisdictional issue by the district court did not determine the merits of the controversy. This is self-evident from the fact that the very order cited by Father also sets the merits of the controversy—his petition to modify visitation—for hearing. Since that order did not determine the merits of the controversy and resolve all outstanding issues, it was not a final, appealable order under W.R.A.P. 1.05(a).

*Id.*

[¶ 10] From the language of W.R.A.P. 1.05 and the holding of *Steele*, we glean three necessary characteristics of an appealable order. It must affect a substantial right, determine the merits of the controversy, and resolve all outstanding issues. *See also Public Service Commission v. Lower Valley Power and Light, Inc.*, 608 P.2d

660, 661 (Wyo.1980) ("a judgment or order which determines the merits of the controversy and leaves nothing for future consideration is final and appealable, and it is not appealable unless it does those things.").

[¶ 11] Clearly, the present order affects a substantial right as we have long recognized parents' fundamental right to "care for, educate, and associate with their children." *Matter of MLM*, 682 P.2d 982, 990 (Wyo. 1984). Likewise, the order determines the merits of the controversy. In this case, the controversy was over the issue of child support, custody and visitation. The parties presented evidence of their abilities and limitations with respect to these issues, and the district court's order made specific findings with regard to these issues. The order adequately addressed the merits of the controversy.

[¶ 12] The final requirement is that an appealable order must resolve all outstanding issues. Father maintains that the "order is not dispositive of custody but merely maintains the status quo until such time as a proper and fully considered custody determination can be made." In domestic cases involving children, a district court can only resolve issues as they exist at the time it hears the case. Because of the dynamic nature of family relationships, district courts have continuing jurisdiction to address new issues as they may arise. Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2003), provides:

> A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children....

The present order resolved the issue of custody when it ordered "that the Temporary Order for custody entered in this case in March, 2002, is adopted and continued until (3) months before [KRA] is eligible to begin Kindergarten...." While it remains uncertain what visitation and custody arrangement will be in KRA's best interests when she begins school, the order clearly states that *currently* "[t]he shared custody arrangement

meets [KRA]'s needs better than sole custody with either parent would." The order addressed child support and custody and no issues remain unresolved.

[¶ 13] Since the order affects a substantial right, determines the merits of the controversy, and resolves all outstanding issues, we find that it is an appealable order.

### Mother's Arguments

■ [¶ 14] Mother's appeal is based on three arguments. She contends that the district court failed to make findings of fact and conclusions of law as required by W.R.C.P. 52, that the district court's decision was contrary to the evidence, and that the decision was not in the child's best interests.

[¶ 15] Prior to the introduction of any evidence, Mother requested, pursuant to W.R.C.P. 52,[1] that the district court make specific findings of fact and conclusions of law. The district court's final order, entitled "Order for Custody and Visitation with Findings of Fact and Conclusions of Law," clearly complies with the requirements of W.R.C.P. 52. In this order, the district court adequately outlines its findings and separately states its conclusions. We find Mother's argument on this issue to be without merit.

■ [¶ 16] Mother next argues that the district court's decision was contrary to the evidence. Mother's appellate brief lists each of the district court's findings and conclusions individually, and then states whether she accepts or disputes them. With every disputed finding, she presents an argument why the finding is inaccurate, generally focusing only on evidence that supports her position and ignoring any contrary evidence. To argue successfully that the decision was contrary to the evidence, Mother must demonstrate that a material factor deserving significant weight was ignored or that a finding was contrary to the evidence or against the great weight of the evidence. *In re MS,* 9 P.3d 984, 986 (Wyo.2000) (*quoting Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998)). This can be a difficult task, considering we " 'afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.' " *In re MS,* 9 P.3d at 986 (*quoting Reavis,* 955 P.2d at 431). We have stated that "[t]he trial judge is in the best position to assess the credibility of witnesses and weigh their testimony, and, thus, this Court accords considerable deference to the trial judge's findings." *Clark v. Clark,* 980 P.2d 821, 823 (Wyo.1999). While the district court's final order may not have characterized every fact as Mother would have liked, or articulated every one of Mother's strengths and Father's weaknesses, the record indicates that both Mother and Father are capable of providing KRA adequate care and support, and that the shared custody arrangement is working well and allows both parents adequate parenting time to develop a relationship with KRA. We find nothing in the record demonstrating that the district court's decision was contrary to the evidence.

■ [¶ 17] Finally, Mother argues that the district court's decision was not in KRA's best interests. Mother contends that the weekly alternating shared custody arrangement, where the parents are living seventy miles apart, and which results in KRA being with her step-sister only every other week, is not in KRA's best interests.

■ [¶ 18] Fashioning a custody arrangement that will best serve the child's best interests is within the discretion of the trier of fact. *Produit,* 2001 WY 123, ¶ 9, 35

---

1. W.R.C.P. 52 reads, in pertinent part:

    (a) *General and special findings by court.*— Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, *unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special* *findings of fact separately from its conclusions of law;* provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal. Requests for findings are not necessary for purposes of review. (Emphasis added.)

P.3d at 1242–43 (*quoting Reavis,* 955 P.2d at 431). We have stated:

> The best interests of the children is the primary consideration when parental custody matters are being determined. *Fanning v. Fanning,* 717 P.2d 346, 352 (Wyo. 1986). "[T]he 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children.' " *Love v. Love,* 851 P.2d 1283, 1287 (Wyo.1993) (quoting *Leitner v. Lonabaugh,* 402 P.2d 713, 720 (Wyo.1965)).

*Dowdy v. Dowdy,* 864 P.2d 439, 440 (Wyo. 1993). The district court must order a custody arrangement that will most adequately serve the child's best interests. While there are instances where shared custody may be appropriate, we have consistently held that we do not favor such an arrangement. *Produit,* 2001 WY 123, ¶ 15, 35 P.3d at 1244; *Reavis,* 955 P.2d at 432; *Martin v. Martin,* 798 P.2d 321, 322 (Wyo.1990).

> There are several reasons for our reluctance to embrace the concept, but first and foremost is the recognition that stability in a child's environment is of utmost importance to the child's well-being, and divided custody places the stability of a child's environment at risk. Whether termed "divided," "shared," or "joint" physical custody, "a measure of instability is inherent" in the arrangement. *Gurney [v. Gurney],* 899 P.2d [52] at 55 [ (Wyo.1995) ]. We do not dispute that there may be cases where joint or shared physical custody may approximate the former family relationships more closely than other custodial arrangements, or for other good reason may be in the best interests of the children. However, divided physical custody may not be indiscriminately substituted for an award of sole custody to one parent in order to appease one party.

*Reavis,* 955 P.2d at 432. In *Reavis,* the district court ordered shared custody stating that this arrangement would promote " 'an ongoing, strong and healthy parent to child relationship between both mother and father.' " *Id.* at 432. We reversed, finding

nothing in the record to support that notion. *Id.*

■ [¶ 19] Here, unlike *Reavis,* the record demonstrates good reason that shared custody is in KRA's best interests, and that shared custody most closely approximates the former family relationship. At trial, Father presented evidence that if Mother was given primary custody, she would attempt to alienate KRA from him.

Q (By [Father's attorney] ) [Father], when you were cohabitating with [Mother] and [her other daughter], did you observe [Mother] and [her other daughter] discussing [her other daughter's] father?

A I know [Mother] has not, really, ever talked directly to [her other daughter] about her father, but she would talk to me, call him names and things like that, and [her other daughter] would be right there. I know that she has taught [her other daughter] to call her dad spic, and has taught her to call her dad fucker.

I know [her other daughter] has told her dad that he is not her dad.

Q [Father], do you have any concerns about what might happen with your daughter if she is left in that environment?

A That is a lot of my concern. I feel that [KRA] if she is with [Mother] will be told certain things that aren't—that are not [true], be told lies, that she will grow up confused and emotionally and mentally unstable through a lot of them, reactions, and/or, things that [Mother] may tell her.

I feel that just the whole emotional and mental stability of everyone on, it seems like, on her side of the family, doing a lot of one week be best friends, next week be worst enemies. I feel that that's unstable for [KRA]. She's—I am just, I guess worried that she will be taught things, and told things that are not the truth and that it could truly hurt her emotionally later on.

The district court found that "[Mother] has actively encouraged her other daughter ... to disparage and otherwise denigrate and be estranged from her father," and that "[Mother's] attempt to unnecessarily criticize [Father] ... indicates her inability to understand the importance of [KRA's] relationship with her father...." The district court con-

cluded that "[Mother] is able to provide personal care for [KRA], and [KRA] would live with her sister in [Mother's] custody. However, [Mother] may deprive her daughter of a complete, emotionally secure relationship with her father." We must afford considerable deference to the district court's findings as "[t]he trial judge is in the best position to assess the credibility of the witnesses and weigh their testimony," *Produit*, 2001 WY 123, ¶ 22, 35 P.3d at 1246.

[¶ 20] We also note that at the time of the hearing, the parties had been exercising shared custody for over nine months and the district court found that "[t]he current shared custody arrangement has not caused difficulties for [KRA]." At the time of the writing of this opinion, KRA will have been in the shared custody arrangement for two years. We have recognized that stability in a child's environment is of utmost importance to the child's well-being. *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995). To change the custody arrangement that KRA has known for two years would jeopardize that stability and be contrary to her best interests. We will affirm the district court's order of shared custody.

## CONCLUSION

[¶ 21] Contrary to Father's assertion, we conclude that the order that is the subject of this appeal is an appealable order as defined in W.R.A.P. 1.05 because it affects a substantial right, determines the merits of the controversy, and resolves all outstanding issues. We also conclude that the district court's findings of fact and conclusions of law were sufficient to meet the requirements of W.R.C.P. 52, that its decision was not contrary to the evidence, and that under the facts of this particular case, shared custody serves the child's best interests. The order of the district court is affirmed.