**FRJ CORPORATION, License # 98 02480, FRJ Corporation, License # 98 02711, James P. Federer, License # 99 04575, James P. Federer, License # 98 03150, Appellants (Petitioners),**

v.

**Dick MASON, Chief Building Inspector, Appellee (Respondent).**

No. 99–50.

Supreme Court of Wyoming.

April 12, 2000.

Representing Appellants: Walter Urbigkit of Frontier Law Center, Cheyenne, WY.

Representing Appellee: Mary B. Guthrie, City Attorney, and Bill G. Hibbler, Special Assistant City Attorney, Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, GOLDEN, and HILL, JJ., and TAYLOR, J., Ret.

LEHMAN, Chief Justice.

After a contested case hearing, the City of Cheyenne Contractor Licensing Board (Board) disciplined the appellants, FRJ Corporation and James Federer, for failure to obtain the required permits and failure to pay the required fees in connection with plumbing work performed within the city limits of Cheyenne. Appellants sought review in the district court, and the matter was certified to this court under W.R.A.P. 12.09. We affirm the Board's decision to suspend the appellants' licenses for ninety days, which decision was rendered as a result of a

contested case hearing in which the Board used the services of a hearing examiner.

## ISSUES

Appellants state this issue:

Does the license suspension/revocation hearing, conducted on the basis that a necessary building permit had not been obtained from the City of Cheyenne (City Development Department), and the adverse decision then made by the Contractor Licensing Board, that the licensee failed to obtain a City utility tap permit for connection with the City sewer and water system to be issued by the Cheyenne Board of Public Utilities constitute divergence between the charge and the decision to render invalid the "guilt" finding and consequent license suspension/revocation when in fact the utility tap permits for the house had been obtained?

In more detail the same issue would be whether the finding of the Contractor Licensing Board in specific Finding Eight and Conclusion Determination Five was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, and unsupported by substantial evidence, when the hearing was litigated on the basis that the contractor wrongfully neglected to obtain a second building permit when a plumbing change was made during construction compared to the decision which is challenged on appeal as erroneous wherein the Board found that the necessary tap permit for connection to the Bureau of Public Utilities managed City sewer and water systems had not been obtained.

The appellee in this matter is Dick Mason, Chief Building Inspector (Inspector) for the City of Cheyenne. He submits three issues for our consideration:

I. Whether the Board's decision suspending the licenses held by the appellants for ninety days is supported by substantial evidence?

II. Whether the Board's decision suspending the licenses held by the appellants for ninety days is arbitrary, capricious, an abuse of discretion or contrary to law?

III. Did the hearing examiner err by refusing to allow the City to present rebuttal testimony?

## FACTS

In June of 1997, appellants, James Federer (Federer), a master plumber with sewer and water main qualified supervisor licenses, and FRJ Corporation (FRJ), a Wyoming corporation, applied with and paid fees to the Board of Public Utilities (BOPU), in connection with the construction of townhouses located at 5701 and 5703 Atlantic Drive in Cheyenne. Federer and FRJ hold plumbing and pipe fitting and sewer and water main contractor licenses.

During the same time period, another building was erected behind the 5703 Atlantic property (Atlantic property) at 700 Gettysburg Drive (Gettysburg property). The Gettysburg property lies outside Cheyenne's city limits. The city plumbing inspector testified that upon his initial inspection of the Atlantic property, he found the plumbing properly constructed. As is customary with all such inspections, the plumbing inspector presumed the area would be backfilled immediately after his approval with no changes made.

Meanwhile, a concerned neighbor, who had been watching the development, questioned the contractors about the nature of the Gettysburg property, especially given the fact that the building was equipped with windows and what appeared to be a bathroom. The contractors assured the neighbor that the building was being constructed as a storage facility. Unsatisfied with this answer, she called city officials and discovered there was no well permit for the Gettysburg property. In the beginning of February of 1998, the neighbor turned a spigot on the outside of the Gettysburg property and water came out. She again contacted city officials.

As a result of the neighbor's multiple contacts with city building officials and reports of an unpermitted water source to the Gettysburg property, the plumbing inspector revisited the Atlantic property and discovered an open ditch outside the property which contained unauthorized plumbing and taps

into the city water and sewer system. In addition to serving the Atlantic property, the lines served the Gettysburg property. Because the appellants failed to obtain the required additional permits and pay fees for the Gettysburg property, the plumbing inspector concluded that the appellants had violated city building and plumbing regulations.

BOPU and the City of Cheyenne Chief Building Inspector filed contractor complaints with the Board on March 2 and March 11, 1998, alleging the appellants failed to comply with the regulations. After several continuances, the Board held a contested case hearing on October 12, 1998, entering its Findings of Facts, Conclusions of Law and Order, on November 10, 1998. The Board determined that the appellants had violated various provisions of the code and regulations and were, therefore, subject to a ninety-day suspension of their licenses.

### STANDARD OF REVIEW

■ In reviewing cases certified under W.R.A.P. 12.09, this court applies the appellate standards which are applicable to a reviewing court of the first instance. *Thomas v. Star Aggregates, Inc.,* 982 P.2d 714, 715 (Wyo.1999). Rule 12.09(a) limits judicial review of administrative decisions to a determination of those matters which are specified in Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) (Lexis 1999), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

■ Substantial evidence is "relevant evidence that a reasonable mind can accept as adequate to support an agency's conclusion." *Whiteman v. Workers' Safety & Compensation Div.,* 984 P.2d 1079, 1081 (Wyo. 1999) (quoting *Casper Oil Co. v. Evenson,* 888 P.2d 221, 224 (Wyo.1995)). The agency, as the trier of fact, must weigh the evidence and determine the credibility of the witnesses. *Matter of Worker's Compensation Claim of Nissen,* 983 P.2d 722, 724 (Wyo. 1999). We will not upset such decisions on appeal if they are supported by substantial evidence. Agency action is arbitrary and capricious if it is "willful and unreasonable, without consideration and in disregard of the facts and circumstances." *Matter of Corman,* 909 P.2d 966, 971 (Wyo.1996).

### DISCUSSION

In the Conclusions of Law, the Board found:

2. Section 3.9.1 of the Contractor's Licensing Board's Rules and Regulations (Rules) provides in relevant part that, generally, Licensees are responsible for work requiring a permit under the provisions of these regulations and City Code. *Licensees must:*

a. *Be responsible for all work covered by the permit for work done directly by the Licensee, Licensee's employees, or subcontractors.*

c. Insure that all required permits are obtained.

g. Build in compliance with applicable codes, regulations and manufacturer's specifications.

k. Pay any fee assessed under the authority of these regulations and the Uniform Technical Codes.

3. Section 4.1.3 of the Rules provides that the Board may suspend or revoke a license

when the Licensee "violates any provisions of these regulations." [1]

4. Section 5.1 of the Rules provides that "[n]o person may perform any work described in these regulations, the building or related codes or in the City Code, without first securing a permit from the Building Official." [2]

After hearing all the evidence, the Board determined that the appellants violated provisions 3.9.1 and 5.1 by knowingly and willfully tapping into the City's potable water and sewer system without authorization or permit.

We conclude, after reviewing the entire record, that the Board's findings that the appellants violated the regulations are supported by substantial evidence. First, the plumbing inspector testified that one of the appellants' subcontractors told him that he installed the illegal connections or taps, under the appellants' direction, after that inspector had inspected the Atlantic property. In addition to the plumbing inspector, the Chief Building Inspector and Federer agreed that neither a BOPU tap nor a city permit was ever applied for or issued. Testimony revealed that additional plumbing connections required additional permits and payment of additional fees. The appellants failed to do this, claiming they did not believe such action was required. However, the Board concluded Federer's argument, that he did not know a permit was necessary, lacked credibility. As the reviewing court, it is not our duty to reassess the credibility of a witness as long as the decision is supported by relevant evidence. *Morgan v. Olsten Temporary Services*, 975 P.2d 12, 15 (Wyo. 1999).

Second, the decision to suspend the appellants' licenses was not arbitrary, capricious, an abuse of discretion, or contrary to law. This argument is based on the premise that the Board's decision was not confined to issues and facts in the notice of hearing or evidence presented at the hearing. As we have previously recognized, only issues and violations identified within a proper notice and complaint may be pursued at a hearing and considered in issuance of an agency decision. *Slagle v. State Bd. of Nursing*, 954 P.2d 979, 982–83 (Wyo.1998). The Notice of Hearing in the case before us specified:

A complaint has been filed against James P. Federer and FRJ Corporation, by Dick Mason, Chief Building Inspector. The complaint alleges that Mr. Federer illegally tapped into the sewer and water lines designed to serve the property at 5703 Atlantic. The illegal tap was intended to serve Mr. Federer's property at 700 Gettysburg, which is in the County. These illegal taps were made subsequent to the underground sewer and water inspection conducted by City Inspector Rick Brittain and prior to the ditch being backfilled.

The Board provided the appellants with adequate notice of the specific issues and violations with which they had been charged, and the Board did not abuse its discretion when it adjudicated those violations.

### CONCLUSION

There was substantial evidence of the appellants' failure to pay the required fees and obtain the required permits. Therefore, we affirm the Board's decision to suspend the appellants' licenses for ninety days.

---

1. *4.0 Suspension or revocation of license.*
   4.1. *Authority*. The Building Official or Board may suspend or revoke a license when the Licensee commits one or more of the following acts or omissions:
   . . .
   4.1.3 Violates any provisions of these regulations.

2. *5.0 Permits.*
   5.1. *Permit required*. No person may perform any work described in these regulations, the building or related codes or in the City Code, without first securing a permit from the Building Official.