2001 WY 37

**Mark A. DORR, CPA, Appellant (Petitioner),**

v.

**The WYOMING BOARD OF CERTI-
FIED PUBLIC ACCOUNTANTS,
Appellee (Respondent).**

No. 00–145.

Supreme Court of Wyoming.

April 11, 2001.

Representing Appellant: Greg L. Goddard of Goddard, Perry & Vogel, Buffalo, WY. Argument by Mr. Goddard.

Representing Appellee: Douglas W. Weaver, Special Assistant Attorney General. Argument by Mr. Weaver.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1] Mark A. Dorr (Dorr) appeals from a decision of the Wyoming Board of Certified Public Accountants (the Board) suspending his license to practice for one hundred days. We conclude that the record does not contain clear and convincing evidence that Dorr violated Wyo. Stat. Ann. §§ 33–3–119 or 33–3–121(a)(ii) (LEXIS 1999). Therefore, we vacate the Board's order suspending Dorr's license.

[¶ 2] Dorr presents the following issues for our consideration:

1. Did the Board properly find that Mark A. Dorr had violated Wyoming Statute § 33–3–119 by having an office that was advertised as an office of a certified public accountant which was neither registered with the Board nor under direct supervision of a resident manager?

    a. Did the evidence support the Board's findings?

    b. Is Wyoming Statute § 33–3–119 constitutional?

2. Did the evidence support the Board's finding that Mark A. Dorr violated Wyoming Statute § 33–3–121(a)(ii) by committing dishonesty in the practice of public accounting?

3. Was the Board's designated investigator of Mark A. Dorr one David Kreycik exempt from being deposed by Mark A. Dorr?

4. Should the assistant attorney general in this matter have acted as both prosecutor and legal advisor to the Board?

The Board restates the issues differently:

1. Is W.S. § 33–3–119 (LEXIS 1999) constitutional?

2. Was there sufficient evidence to find that Dorr had violated W.S. § 33–3–119 (LEXIS 1999)?

3. Was there sufficient evidence to find that Dorr committed dishonesty in the practice of public accounting and as such violated W.S. § 33–3–121(a)(ii) (LEXIS 1999)?

4. Was W.S. § 16–3–107(k) (LEXIS 1999) violated?

5. Was the Hearing Officer correct when he granted David Kreycik's Motion to Quash Subpoena?

## FACTS

[¶ 3] On January 22, 1999, the Board filed a Complaint against Dorr alleging that he had failed to: (1) complete two audits and a tax return; (2) properly represent his fees for an audit; (3) complete a peer review as required by Wyo.Stat.Ann. § 33–3–121; and (4) have a resident manager for an office represented as a certified public accounting firm as required by Wyo.Stat.Ann. § 33–3–119. The parties resolved the Complaint through a Settlement Agreement and Stipulation (the Settlement Agreement), which was accepted by the Board on May 5, 1999. Pursuant to the Settlement Agreement, Dorr did not admit to any wrongdoing but he agreed to be bound by the following conditions:

13. As of the date of this agreement, Dorr agrees to limit the scope of his practice to exclude all audits. Prior to re-entry into audit practice, Dorr agrees to petition the Board for approval and agrees to a review of a post agreement audit engagement by a firm approved by the Board's representative. This review is to demonstrate to the Board the [sic] Dorr is competent to perform audits. The scope of the review is to be a "pre-issuance" review, the requirements of which are less in scope and magnitude than a peer review. Dorr further agrees to reimburse the Board for the costs associated with this review. Should Dorr re-enter the audit practice, he further agrees to undergo peer review in compliance with the Board Rules and Regulations.

14. Dorr shall fully comply with the Certified Public Accountant's Act of 1975, and the Board's administrative rules and regulations. Specifically, Dorr shall fully comply with Wyo.Stat. § 33–3–119.

15. Dorr agrees that the Board shall retain continuing jurisdiction over him to take further action as may be necessary to conclude this matter.

[¶ 4]   In June of 1999, Dorr was contacted by the Wyoming Beef Council to perform an audit.   Dorr filed a letter with the Board requesting permission to conduct the audit and initiate the process of a "pre-issuance" review of that audit as required by the Settlement Agreement.   At that time, Dorr did not inform the Beef Council of the restrictions imposed on his ability to perform audits by the Settlement Agreement.   A hearing was held on the matter on September 21, 1999.   During the hearing, Dorr amended his request to substitute an audit for the Sixth Judicial District Child Support Authority instead of the Beef Council.   The Board approved Dorr's request and allowed him to perform the audit.

[¶ 5]   On October 6, 1999, the Board issued a Notice of Hearing to determine whether Dorr had complied with the terms of the Settlement Agreement.   Specifically, the Board noted that there were two allegations of non-compliance against Dorr.   First, it was asserted that Dorr had not retained a resident manager for his Cheyenne office.   Paragraph 14 of the Settlement Agreement required Dorr to comply with the provisions of § 33-3-119, which requires all offices that advertise to the public as providing certified public accounting services to have a registered resident office manager.   Second, it was alleged that Dorr had given deceitful testimony during the September 21, 1999, hearing on his request to remove the audit restriction imposed by the Settlement Agreement.   The bases of the allegation was that Dorr had engaged in fraud or deceit in obtaining a certificate or a permit in violation of § 33-3-121(a)(i) and had engaged in the dishonest practice of public accounting in violation of § 33-3-121(a)(ii) when he failed to disclose his restricted audit ability pursuant to the Settlement Agreement at the time he was tendered an engagement contract to perform an audit by the Beef Council.

[¶ 6]   Prior to the hearing on the new allegations, Dorr attempted to take the deposition of Board member David J. Kreycik. The Assistant Attorney General for the Board filed a Motion to Quash Subpoena of David J. Kreycik pursuant to Wyo.Stat.Ann.

§ 16-3-107(h) (LEXIS 1999).   The Board, acting through the hearing officer assigned to the matter, granted the motion to Quash on the basis that Kreycik, as a member of the presiding agency, was not subject to being compelled to give testimony or a deposition under § 16-3-107(h).

[¶ 7]   A hearing was held before the Board and the hearing examiner on February 3, 2000.   The hearing examiner made the following findings of fact and conclusions of law:

8. On or about October 6, 1999, a *Notice of Hearing* was filed against Mr. Dorr, alleging several violations of Paragraph 14 of the *Settlement Agreement.* Specifically, it was alleged that Mr. Dorr had violated Paragraph 14 by:

A) Advertising an office offering certified public accounting services to the public, without having a resident manager at that location, in violation of Wyo.Stat. § 33-3-119;

B) Engaging in deceit in obtaining a certificate or permit to practice as a certified public accountant, in violation of Wyo.Stat. § 33-3-121(a)(i); and

C) Dishonestly practicing public accounting, in violation of Wyo.Stat. § 33-3-121(a)(ii).

9. After the date that the *Settlement Agreement* was entered into, Mr. Dorr, as the "CPA Network, Dorr and Associates", had established and maintained an office at 1920 Thomes Avenue, Suite 110, Cheyenne, Wyoming (Office), offering certified public accounting services to the public.

10. That Office was advertised as offering certified public accounting services by:

A) A listing upon the building directory until August 26, 1999;

B) A sign[1] posted upon the office door stating, "*CPA Network now available on an appointment basis. If no one is in please call 635-8000 or out of Cheyenne call toll-free 1-877-579-*

---

1.  The sign was a printed on an 8½" by 11" sheet   of paper taped to the door.

*8080. My apologies for any inconvenience. Mark A. Dorr, CPA "*; and

C) Having informational pamphlets available for public access within the Office.

11. That Office was established and maintained as an office offering certified public accounting services as indicated by:

A) Its advertising;

B) Its receiving business mail at the address;

C) Its interacting with clients at the address. Specifically, Pat Swan, Executive Director of the Wyoming Beef Council, visited that Office on July 8, 1999, to conduct business with Mr. Dorr.

D) A Certificate of Organization for DORR, BENTLY & PECHA, THE CPA NETWORK, LLC filed with the Wyoming Secretary of State. That Certificate indicates that the LLC's business is that of "... the practice of accountancy in the State of Wyoming in accordance with the Rules of Professional Conduct as adopted by the American Institute of Certified Public Accountants ..." and lists its principal place of business as 1920 Thomes, Suite 110 Cheyenne, WY 82001.

12. After the date that the *Settlement Agreement* was entered into, the Office was not registered with the Board.

13. After the date that the *Settlement Agreement* was entered into, the Office was not under the direct supervision of a resident manager who served in that capacity for only one office.

14. In a previous hearing conducted by the Board, on September 21, 1999, wherein Mr. Dorr was the respondent, he testified under oath that:

A) "[s]hortly after" June of 1999, he contacted the Wyoming Beef Council and informed it of his restricted licensure status;

B) He owned 1% share of the firm known as Dorr, Bentley and Pecha; and

C) His firm withdrew from certain audit engagements.[2]

15. On June 15, 1999, Pat Swan, Executive Director of the Wyoming Beef Council, telephoned Mr. Dorr to inform him that the Beef Council had again approved of a contract extension for his firm to conduct its audit for the fiscal year ending June 30, 1999. At or about that time, Mr. Dorr did not inform the client, Beef Council, that he could not perform the audit because of the restriction placed on his scope of practice by the *Settlement Agreement* and *Board Order.*

16. On June 22, 1999, the Beef Council sent an audit engagement contract to Mr. Dorr, along with a letter. At or about that time, Mr. Dorr did not inform the client, Beef Council, that he could not perform the audit because of the restriction placed on his scope of practice by the *Settlement Agreement* and *Board Order.*

17. On or about July 8, 1999, an agent of Mr. Dorr's office telephoned the Beef Council and informed Pat Swan that the audit contract sent to Mr. Dorr included some typographical errors in dates. Ms. Swan retyped the audit contract and personally delivered it to Mr. Dorr's Office the same day. At or about that time, Mr. Dorr did not inform the client, Beef Council, that he could not perform the audit because of the restriction placed on his scope of practice by the *Settlement Agreement* and *Board Order.*

**2.** The Board cites Paragraph 14 in its entirety in support of its conclusion that Dorr violated Wyo. Stat.Ann. § 33–3–121(a)(ii). See Conclusion of Law 6. The Board, however, only discusses the failure of Dorr to inform the Beef Council of the audit restriction imposed by the Settlement Agreement in its Conclusions of Law. Our review of the record indicates that there would be insufficient evidence to support the allegations relating to Dorr's ownership interest and his withdrawal from the audit engagements.

18. On August 5, 1999, Mr. Dorr personally initiated a telephone call to Pat Swan at the Beef Council. Ms. Swan returned that telephone call on August 6, 1999. Mr. Dorr was inquiring what date he could begin performing field work for the requested audit. Because additional reports had to be obtained by the Beef Council, the audit field work could not start until later. Mr. Dorr indicated that he would call the following week to set up a time to begin the audit field work. At or about that time, Mr. Dorr did not inform the client, Beef Council, that he could not perform the audit because of the restriction placed on his scope of practice by the *Settlement Agreement* and *Board Order.*

19. On August 30, 1999, Mr. Dorr visited the Beef Council and informed Pat Swan that he was scheduled for a hearing before the Board concerning a complaint from the City of Douglas. He indicated that he believed he could still perform the audit. But, if he could not, he would assist the Beef Council in selecting another firm or in any other way. At or about that time, Mr. Dorr did not inform the client, Beef Council, that he could not perform the audit because of the restriction placed on his scope of practice by the *Settlement Agreement* and *Board Order.*

20. During Mr. Dorr's entire dealings with Ms. Swan and the Beef Council, he intentionally failed to inform them concerning his restricted practice. He told Ms. Swan that he believed everything was fine. During this time he was restricted from any and all audit practice.

### Conclusions of Law

. . . .

3. Mr. Dorr has violated Wyo. Stat. § 33-3-119, as established by his actions set forth in Findings of Fact 8, 9, 10, 11 and 12, above. He was responsible for the Office maintained, established and located at 1920 Thomes Avenue[,] Cheyenne, Wyoming. The Office was advertised as an office of a certified public accountant which was not registered with the Board or which was not under direct supervision of a resident manager, serving in that capacity at one office only.

4. Wyo.Stat. § 33-3-119 prohibits Mr. Dorr from serving as the resident manager of two separate offices located in Gillette and Cheyenne.

5. There is no evidence in the record to hold that Mr. Dorr violated Wyo.Stat. § 33-3-121(a)(i). At no time relevant to these matters, was Mr. Dorr seeking to obtain a certificate or permit to practice. Therefore, he could not have committed any fraud or deceit in connection therewith, regardless of the veracity of his testimony offered at the September 21, 1999, hearing.

6. Mr. Dorr has violated Wyo.Stat. § 33-3-121(a)(ii), by committing dishonesty in the practice of public accounting. That conclusion is established by his actions set forth in Findings of Fact 5, 14, 15, 16, 17 and 18, above.

7. At no time did Mr. Dorr inform the Beef Council that he was prohibited from performing any audit because of a restriction placed upon his scope of practice. He instead continued to lead the Beef Council into believing that he could and would be conducting the requested audit. Mr. Dorr even initiated contact with the Beef Council on August 5, 1999, to further secure the audit work.

8. Discussing a specific audit with the Beef Council, including an attempt to schedule field work, is audit practice. We find that Mr. Dorr was conducting audit practice with the Beef Council, without informing it that he was prohibited from doing so.

9. We conclude that Mr. Dorr's actions relating to the Beef Council audit, separately or collectively is dishonest conduct in the practice of public accounting.

10. Because Mr. Dorr has violated Wyo. Stat. § 33-3-119 and/or § 33-3-

121(a)(ii), he has violated both Paragraph 14 of the *Settlement Agreement* and Paragraph 3 of the *Board Order.*

11. The violations set forth, concluded and found herein, either separately or collectively, are grounds for discipline by the Board against the permit and/or certificate to practice held by Mr. Dorr, pursuant to Wyo.Stat. § 33–3–119; Wyo.Stat. § 33–3–121(a)(ii); the *Settlement Agreement;* and/or the *Board Order.*

The Board suspended Dorr's license to practice public accounting for one hundred days. Dorr appealed to the district court, which has certified the matter to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

[¶ 8] The Certified Public Accountant's Act (Wyo.Stat.Ann. §§ 33–3–101 through 33–3–132 (LEXIS 1999)) provides for judicial review of Board disciplinary proceedings pursuant to the Wyoming Administrative Procedure Act. Wyo.Stat.Ann. § 33–3–123 (LEXIS 1999). The standards for judicial review of agency action are set forth in Wyo.Stat.Ann. § 16–3–114(c) (LEXIS 1999):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

A disciplinary proceeding before a licensing board is an adversary proceeding where the burden is on the complaining party to present its case in a proper manner and to state with precision the charges against the licensee. *Devous v. Board of Medical Examiners,* 845 P.2d 408, 416 (Wyo.1993). Those charges must be established by clear and convincing evidence. *Id.; Painter v. Abels,* 998 P.2d 931, 939–40 (Wyo.2000). We have defined clear and convincing evidence to be the "kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *Meyer v. Norman,* 780 P.2d 283, 291 (Wyo.1989) (quoting *MacGuire v. Harriscope Broadcasting Company,* 612 P.2d 830, 839 (Wyo.1980)).

[¶ 9] The interpretation of statutory language is necessary to our resolution of this case:

"We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making ' "an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." ' * * *"

* * * "When the court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction." * * * If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent.

*Steele v. Neeman,* 6 P.3d 649, 653 (Wyo.2000) (internal citations omitted) (quoting *Basin Electric Power Co–Op. v. Bowen,* 979 P.2d 503, 506 (Wyo.1999)).

## DISCUSSION

■ [¶ 10] Paragraph 14 of the Settlement Agreement required Dorr to comply with the provisions of § 33–3–119, which provides:

Each office of a certified public accountant established or maintained in Wyoming for the practice of public accounting which is advertised as an office of a certified public accountant shall be registered annually with the board. No fee shall be charged for the registration of offices. Each office shall be under the direct supervision of a resident manager who holds a permit. The resident manager may serve in that capacity at one (1) office only. The board shall by regulation prescribe the procedure to be followed in effecting these registrations.

The statute effectively defines what constitutes an "office" of a certified public accountant. If an office is established or maintained in this state for the practice of public accounting *and* is advertised as an office of a certified public accountant, then the office must be registered annually with the Board. The statute also requires each office to be under the direct supervision of a permitted resident manager. Thus, a certified public accountant may own or lease physical office space in a building, but that would only constitute an "office" for purposes of § 33–3–119 if it were advertised as the office of a certified public accountant. Therefore, the dual requirements of the statute, annual registration, and direct supervision by a resident manager, are dependent on whether the office was "advertised."

[¶ 11] There is no question here that Dorr had physical office space in Cheyenne, although all mail and phone calls received at that office were forwarded to Dorr's Gillette office. There is also no question that the Cheyenne office was not registered with the Board, and there was no resident manager. The question is whether that physical office was an "office" of a certified public accountant as set forth in § 33–3–119, and the resolution of that issue hinges on whether Dorr advertised the office. The Board concluded that Dorr indeed had. In support of its conclusion, the Board relied on the following findings: (1) a listing on the building directory that CPA Network had an office there; (2) a sign posted on the office door stating that Dorr's firm, CPA Network, was available on an appointment basis and listing contact telephone numbers; (3) informational pamphlets entitled "Divorce: Yours, Mine or Ours" with CPA Network listed on them, which were available to the public in the office; (4) business mail was received at the office; (5) Dorr met the director of the Wyoming Beef Council there; and (6) a certificate of organization was on file at the Wyoming Secretary of State's office, which stated that CPA Network's business was the practice of accountancy within the state of Wyoming.

[¶ 12] Dorr counters with two arguments. First, he contends that § 39–3–119 is an unconstitutional infringement on his First Amendment rights to commercial speech. Second, Dorr argues that none of the facts relied upon by the Board, individually or collectively, constitute an "advertised" office of a certified public accountant.

■ [¶ 13] Procedurally, Dorr is barred from raising his constitutional claim in the context of this case. Dorr attempted to raise the issue during the hearing before the Board. The Board correctly concluded that it did not have the authority to determine constitutional issues. *In re Shryack*, 3 P.3d 850, 856 (Wyo.2000) (citing *Belco Petroleum Corporation v. State Board of Equalization*, 587 P.2d 204, 214 (Wyo.1978)). The proper procedure is a declaratory judgment action pursuant to W.R.A.P. 12.12. *Shryack*, 3 P.3d at 856–57; *In re Conflicting Lease Applications for Wyoming Agr. Lease No. 1–7027*, 972 P.2d 586, 587 (Wyo.1999). Since the issue is not properly before us, we decline to address the constitutionality of § 33–3–119.

■ [¶ 14] In qualifying the requirement of a resident manager or annual registration by whether a CPA's office is "advertised as an office of a certified public accountant," Wyoming's statute appears to be unique.[3]

---

3. Other jurisdictions require a resident manager   and annual registration without any qualifica-

The term "advertised" is not defined in the Certified Public Accountant's Act of 1975. When a term is not defined within a statutory scheme, we look to the ordinary and usual meaning accorded to the word. *RT Communications, Inc. v. State Board of Equalization*, 11 P.3d 915, 922 (Wyo.2000). In an ordinary sense, "advertise" means:

> To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever. Any oral, written or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise.

Black's Law Dictionary 54 (6th Ed.1990). We will address each of the grounds cited by the Board in support of its conclusion that Dorr advertised an office of a certified public accountant.

[¶ 15] Initially, we can quickly dispense with three of the grounds as irrelevant to whether Dorr advertised: (1) business mail was received at the office; (2) Dorr met the director of the Beef Council at the office; and (3) a certificate of organization was on file at the Wyoming Secretary of State's office. These are indicative of the fact that Dorr had physical office space, but they do not evidence any form of advertising. We fail to see how having mail delivered to a particular place, meeting a potential client there, or having a certificate of organization on file at the office of the Secretary of State "advise, announce, apprise, command, give notice of" or call to the public's attention that Dorr maintained an office of a certified public

accountant. These findings are simply irrelevant to the issue.

[¶ 16] The other three findings relied upon by the Board were: (1) the building directory listed CPA Network; (2) the handwritten sign posted on the office door stating that CPA Network was available on an appointment basis with contact telephone numbers listed; and (3) the presence of a brochure on divorce that included CPA Network's name and contact information.[4] In the absence of a more specific definition of "advertised" either in the Act or in agency rules, we cannot conclude that these grounds are sufficient to find by clear and convincing evidence that Dorr had advertised the office of a certified public accountant. An action may constitute "advertising" if it was intended to call the public's attention or if it did, in fact, have that affect. The record clearly indicates through Dorr's testimony that he did not have any intent to "advertise" to the public through a sign on an office door. Certain activities, such as television or radio spots, would be by themselves indicative of advertising. We do not, however, perceive the directory or sign rising to that level. It is important to note that neither the sign nor the directory listing contained more than the company name, Dorr's name, and a telephone number. The inclusion of only that basic information supports Dorr's position. In the absence of any evidence that Dorr's sign or the directory actually attracted potential clients, we conclude that there is no clear and convincing evidence that Dorr advertised an office of a certified public accountant within the meaning of § 33–3–119.

[¶ 17] The Board also suspended Dorr's license based on its conclusion that he had violated Wyo.Stat.Ann. § 33–3–121(a)(ii), which provides:

> After notice and hearing, the board may revoke, or may suspend for a period not to exceed two (2) years, any certificate issued

---

tions. See, *e.g.,* Ark.Code Ann. § 17–12–403 (Michie 1999 Supp.); Iowa Code Ann. § 542C.19 (West 1997); Mo.Ann.Stat. § 326.055 (West 1989); S.C.Code Ann. § 40–2–330 (West 2001); and Wash.Rev.Code Ann. § 18.04.205 (West 2001 Supp.).

4. The brochures were located in a reception area inside the office. The office was generally not open to the public since it was not Dorr's regular office and he met clients there only upon appointment. The Board made no findings on the public's access to the area where the brochures were located.

under this act [§§ 33–3–101 through 33–3–132] or may revoke, suspend or refuse to renew any permit issued under this act or may censure the holder of a permit for any of the following causes:

. . . .

(ii) Dishonesty, fraud or gross negligence in the practice of public accounting[.]

The Board concluded that Dorr's failure to inform the Beef Council of the restriction placed on his ability to conduct audits by the Settlement Agreement amounted to dishonesty in the practice of public accounting. The Board's finding is insufficient to constitute clear and convincing evidence of dishonesty. Pursuant to the Settlement Agreement, Dorr was prohibited from conducting audits. That prohibition was not, however, absolute: the Settlement Agreement provided for Dorr's re-entry to audit practice dependent on his compliance with the terms imposed under the Agreement. The Beef Council contacted Dorr about performing an audit, and Dorr immediately filed a request with the Board to conduct the audit and to initiate the pre-issuance review required by the Settlement Agreement. This is exactly what the Settlement Agreement required Dorr to do. Nowhere in that Agreement is there a requirement that Dorr inform the prospective audit client that his license was restricted[5]. There is nothing in the record to indicate that Dorr owed some duty to disclose his license status to the Beef Council. Perhaps he should have, but the Board has not directed us to any statute, rule, or accounting practice that required him to do so under the circumstances of this case. Without reference to some standard, a practitioner would have no notice that their conduct is prohibited. Since Dorr complied with the letter of the Settlement Agreement, we conclude that the Board has failed to prove by clear and convincing evidence that Dorr

committed dishonesty in the practice of public accounting.

[¶ 18] Dorr raises two additional arguments: (1) the hearing examiner erred in quashing Dorr's subpoena of Board member David J. Kreycik; and (2) the assistant attorney general improperly acted as both prosecutor and legal advisor to the Board. Since we have found that both of the grounds relied upon by the Board in suspending Dorr's license are unsupported by clear and convincing evidence, these issues are moot. However, we think it is appropriate to add a few brief words about these issues.

■ [¶ 19] Prior to the hearing on the allegations that Dorr had violated the terms of the Settlement Agreement, he attempted to depose Board member David J. Kreycik. The hearing examiner granted a motion to quash, and Dorr challenges that decision on appeal. Dorr has not followed the correct procedure for challenging a denial of discovery request:

Any agency which is a party to the contested case is subject to the discovery provisions of this section but neither the agency, nor any member, officer or employee shall be required to disclose information which is confidential or privileged under the law and no member of the presiding agency shall be compelled to testify or give a deposition in a contested case. Discovery sought from the agency initially shall be by written application. If the agency refuses to allow discovery in whole or in part the aggrieved party may apply to the presiding officer for an order compelling discovery. *If the presiding officer fails or refuses to compel discovery, the aggrieved party may apply to the district court for the district in which the hearing, deposition or other proceeding is being or is to be conducted for an order directed to the agency compelling discovery.* The presiding officer or district court

---

5. The Board concluded that Dorr's preparatory work, including discussing the audit with the Beef Council and attempting to schedule fieldwork, constituted audit practice in violation of the restriction placed on his license under the Settlement Agreement. The Notice of Hearing setting forth the charges against Dorr alleged that he failed to disclose the restrictions imposed on his license to the Beef Council. The Notice did not allege that Dorr actually conducted an audit in violation of the Settlement Agreement. Only issues and violations identified within a proper notice and complaint may be pursued at a contested case hearing and considered in issuance of an agency decision. *FRJ Corporation v. Mason*, 4 P.3d 896, 900 (Wyo.2000).

shall enter such order as may be appropriate.

Wyo.Stat.Ann. § 16–3–107(h) (LEXIS 1999) (emphasis added). The proper remedy for Dorr was to apply to the district court, not to wait until the matter had been decided and then raise it as an issue on appeal.

[¶ 20] Dorr also complained that the assistant attorney general assigned to this matter acted as the prosecutor while simultaneously advising the Board on legal matters. We will make no finding regarding the propriety of the assistant attorney general's actions in this case, but we will emphasize what we recently stated in another case:

Dr. Painter alleges improper *ex parte* contacts occurred between the Board's attorney (who represented the Board and prosecuted Dr. Painter at the contested case hearing) and the Board sitting as decision maker. She asserts these contacts adversely affected her right to a fair, unbiased hearing. Due process requires that an agency provide a fair trial without the appearance of bias or prejudice. *State Transportation Commission of Wyoming v. Ford*, 844 P.2d 496, 497–98 (Wyo.1992); *ANR Production Company v. Wyoming Oil and Gas Conservation Commission*, 800 P.2d 492, 499 (Wyo.1990); Wyo.Stat. Ann. § 16–3–112(a) (LEXIS 1999). Additionally, Wyo.Stat.Ann. § 16–3–107(k) (LEXIS 1999) (emphasis added) prohibits the following contacts:

(k) ... Any person representing an agency at a hearing in a contested case in which the agency is a party shall not in the same case serve as presiding officer *or provide ex parte advice regarding the case to the presiding officer or to the body or any member of the body comprising the decision makers.*

The record and oral arguments make it clear the Board's attorney: (1) advised the Board throughout the development of the case against Dr. Painter; (2) prosecuted the case before the hearing panel which was comprised of Board members; and (3) continued to advise the Board during preparation of the final findings and order. The separation of these functions is necessary to assure fairness. The contacts between the Board and its attorney violated § 16–3–107(k) and contributed to the overall appearance of unfairness regarding the proceedings.

*Painter v. Abels*, 998 P.2d 931, 938–39 (Wyo. 2000). Fundamental considerations require not just fairness in fact but also fairness in appearance. Agencies sitting in a contested case proceeding must be vigilant to keep separate their prosecutorial and advisory functions.

## CONCLUSION

[¶ 21] The Board's order suspending Dorr's license to practice public accounting was not supported by clear and convincing evidence. Therefore, that order is hereby vacated.