2001 WY 123

**Susan Elizabeth PRODUIT,
Appellant (Defendant),**

v.

**Fred Allan PRODUIT, Jr.,
Appellee (Plaintiff).**

**No. 01–18.**

Supreme Court of Wyoming.

Dec. 10, 2001.

Representing Appellant: Kathryn J. Edelman of Law Office of Kathryn J. Edelman, Gillette, WY.

Representing Appellee: Dwight F. Hurich of Hurich Law Office, Gillette, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]  Susan Elizabeth Produit (the mother) appeals the district court's divorce decree which awards Fred Allan Produit, Jr. (the father) custody of the two boys born during the marriage.  We affirm.

## ISSUES

[¶ 2]  The mother presents a single issue:

Did the district court abuse its discretion when it awarded primary custody of the parties' minor children to the father? That is, was the ruling of the court inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence?

The father similarly frames only one issue:

Did the district court have sufficient and material evidence to find that it was in the children's best interest to be in the primary custody of their father?

## FACTS

[¶ 3]  The mother and the father were married on April 6, 1991.  The couples' first son was born on September 7, 1991, and their second son was born on June 25, 1995.  On April 25, 2000, the mother separated from the father, leaving the two boys in the father's care. The eldest child of the marriage has attention deficit hyperactivity disorder (ADHD) for which he receives medication and educational assistance.  The mother also has another son, born prior to the marriage and by a different father.  At her husband's request, she took this child with her when she left the marital home.[1]

[¶ 4]  In May of 2000, the father filed a divorce complaint and a motion for temporary custody of the two children.  The mother answered, counterclaimed, and filed a cross-motion for temporary custody.  Subsequent to a temporary custody hearing held on June 20, 2000, the district court issued an "Order of Temporary Custody, Visitation, Child Support, and Medical Insurance" awarding the father temporary custody and the mother visitation rights.  This temporary order provided in relevant part:

[T]he [father] shall have temporary care, custody, and control of the parties' minor children  ...  subject to the [mother's] rights of visitation, pending final disposition of this matter or until further order of this Court.

---

1.  Although the record does not reflect a birth date for this child, he appears to have been approximately ten years old at the time of the divorce trial and roughly one year older than the first son born during the marriage.

... [T]he [mother's] rights of visitation during the pendency of this action shall include every other weekend when Friday is an odd numbered day, from the time the [mother] picks up the children from either the [father] or the babysitter after she gets off work until the following Monday. The [father] will pick up the children from either the babysitter or the [mother] when he gets off work on these Mondays.

... [T]he [mother] shall have the right to have the minor children with her for one weeknight overnight per week during the pendency of this action, conditioned on the [mother] not working past 8:00 p.m. and being able to pick up the children shortly thereafter.

... [N]either party shall pay child support to the other during the pendency of this action or until further order of this Court.

... The [mother] shall cover all costs of babysitting for the minor children during the pendency of this action.

[¶ 5] The father had custody of the two boys from the date of separation April 25, 2000 through the divorce trial held on October 17, 2000. At trial, the father testified on his own behalf and also called several witnesses including a frequent babysitter for the boys, a friend with whom the father had coached basketball for the boys, a friend who had witnessed an exchange with the mother, and the father's stepmother. The mother testified on her own behalf but called no other witnesses.

[¶ 6] Subsequent to the evidentiary presentation, the district court made the following comments regarding his conclusions on the issue of custody:

As far as child custody is concerned, it appears to me that both parties are fit and proper parents and capable of raising the children. It seems that the children have been doing reasonably well the last several months, so I think it would be in their best interest to continue with that same arrangement that is set forth in the temporary decree and making that permanent with the [father] to have custody and the [mother] to have the visitation as set forth in that order....

The court further determined, consistent with the temporary custody order and the suggestion of the father's counsel, that in lieu of child support the mother would be required to personally provide and/or pay for necessary babysitting. The record reflects no objection by the mother to this resolution of the child support issue.

[¶ 7] In the written decree issued December 15, 2000, the only findings the district court made specifically with regard to the custody issue were:

7. Both parents are fit and proper persons to have custody of the minor children of the parties;

8. The arrangements in the *Order of Temporary Custody, Visitation, Child Support, and Medical Insurance* entered on July 18, 2000 appear to be working reasonably well and it would be in the children's best interests to continue with these arrangements[.]

On these findings, the court ordered the father to be the custodial parent with primary responsibility for the care, control, and supervision of the minor children subject to the mother's rights of summer custody and other visitation. The terms of the ordered visitation were virtually identical to the terms set out in the temporary order, with minor language changes due to the permanent nature of the decree.

[¶ 8] The mother appeals contending the district court abused its discretion by failing to articulate the reasons for the custody award. She also maintains the award constitutes a divided custody arrangement which is not favored by the courts. Lastly, she argues the award is contrary to the great weight of the evidence and ignores the material and uncontroverted fact that she was the children's primary care giver prior to the separation.

## STANDARD OF REVIEW

[¶ 9] We have previously reiterated the well recognized standard of review for custody determinations:

Custody, visitation, child support, and alimony are all committed to the sound

discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink* [*v. Fink*], 685 P.2d [34,] 36 [(Wyo.1984)].

*Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo. 1998) (some citations omitted). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Pace v. Pace*, 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (2001); *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

Our review entails evaluating the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. We cannot sustain findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored. *RDS v. GEMN*, 9 P.3d 984, 986 (Wyo. 2000).

*Pace*, at ¶ 10.

## DISCUSSION

### A. Required Articulation of Factors in Light of *Resor* and *Pace*

██ [¶ 10] The mother contends the district court failed to articulate sufficient findings to support the custody award to the father. She refers to both the district court's limited pronouncements at the conclusion of the trial and the decree findings at paragraphs 7 and 8, set out above in the recitation of the facts. Although we have consistently and strongly urged the district courts to make a record of the critical circumstances and factors which constitute the foundation of a custody award, we have yet to command this be done in all instances.

In *Reavis*, we suggested that the trial court spell out its reasons so that counsel and the reviewing court will know what those reasons are, and be in a position to evaluate the soundness of its decision. *We continue to encourage a trial court relying on discretionary power to place on record the circumstances and factors that were crucial to its determination. However, it is not required to do so.*

Additionally, our rules do not require the trial court to issue findings of fact "unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial." W.R.C.P. 52(a).... Neither party made such a request and, as such, ... will not be heard to complain of the absence of formal findings.

*Resor v. Resor*, 987 P.2d 146, 148 (Wyo.1999) (citation omitted and emphasis added). The general rule is that no findings are required absent a request pursuant to W.R.C.P. 52(a). In this case, the parties made no such request.

[¶ 11] In *Pace*, we enunciated one specific exception to the general rule in split custody situations. We defined the concept of "splitting custody" to mean those instances where siblings are separated from one another through custody awards to different parents.

As future guidance to the trial courts, we hold that, when the exercise of its discretion in custody matters involves splitting custody of children between parents or other unconventional custody approaches, the trial court must provide an explanation of its reasoning and place its findings on the record. A reasoned explanation and an expression of findings of a trial court's conclusion will assure this court that a comprehensive evaluation of all relevant factors occurred prior to the award of custody.

*Pace*, at ¶ 17 (footnote omitted). The instant case does not present a split custody scenario, and, for this reason, the *Pace* exception is inapplicable.

[¶ 12] Although explicit findings are not generally compelled, we note that Wyo. Stat.

Ann. § 20–2–201(a) (LexisNexis 2001) became effective July 1, 2000, and sets out the factors the court shall consider in the proper disposition of children in a divorce. 2000 Wyo. Sess. Laws ch. 34, §§ 1, 8.[2] This statute, although not specifically requiring findings as to the various factors, does direct the factors the court shall consider in ordering the disposition of children. On appeal, this court can ascertain whether the factors have been appropriately weighed only if the district court's consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order.

[¶ 13] The instant case is somewhat unusual in that the Honorable Terrence L. O'Brien, now retired, presided over the temporary custody hearing; the Honorable Dan Spangler, retired, presided over the divorce trial; and the Honorable John R. Perry signed the divorce decree. Given multiple judges presided over different phases of the same case, the record is not as clear as it could be. However, bearing this in mind and having thoroughly reviewed this record, we are persuaded the § 20–2–201(a) factors were considered in the course of the divorce trial. We note, in the future, remand may be necessary if the consideration of § 20–2–201(a) factors is not patent in the district court record.

## B. Divided Custody Allegation

■ [¶ 14] The mother also maintains the custody award constituted divided custo-

dy. Relying on *Reavis,* 955 P.2d 428, she further argues the district court's findings were inadequate. Her reliance on this case is misplaced.

[¶ 15] *Reavis* presented a true shared custody arrangement wherein the children were to live with one parent for nine weeks and then go back to the other parent for the next nine weeks, alternating in this manner between the two parents and the two homes. This type of divided arrangement is not favored and requires an *evidentiary* basis to support the conclusion such flux is in the children's best interest. *Reavis,* 955 P.2d at 432; *see also Martin v. Martin,* 798 P.2d 321, 322 (Wyo.1990); *Feaster v. Feaster,* 721 P.2d 1095, 1098 (Wyo.1986). However, "[w]e reversed in *Reavis* because there was no evidence to support the court's decision, not because it did not make findings of fact." *Resor,* 987 P.2d at 148.

[¶ 16] The instant custody award does not constitute a shared or divided arrangement. It is only the mother's babysitting obligation that might arguably lend a divided or shared nuance. The district court ordered, in lieu of the mother paying child support, that she provide babysitting, presumably as required by the parents' work schedules. This had been the situation provided by the temporary custody order. During the summer months, it basically meant the mother ensured child care for the boys from the time she went to

2. Section 20–2–201(a) provides:

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–101 through 14–2–120, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

work through the time the father returned from work. During the school year, it translated to her providing child care for the boys from the time school was over until the father returned from work. At trial, the father's attorney suggested this situation could be continued. The trial transcript reflects no objection by the mother, and the district judge clearly accepted the proposal stating: "That sounds all right to me if you want to."

■ [¶ 17] This babysitting requirement could as easily be characterized as a child support agreement. Such a description is at least as accurate as, and perhaps more so than, labeling it a custody determination. Further, the mother did not object to the provision. Nor did she object to what she now portrays as divided or shared custody. Excepting appeals which involve issues of jurisdiction or fundamental rights, we will not customarily consider contentions of error unless the trial court has first been apprised thereof and been given an opportunity to rule. *Dennis v. Dennis*, 675 P.2d 265, 266 (Wyo.1984); *see also Rowan v. Rowan*, 786 P.2d 886, 889 (Wyo.1990). Our determination that the district court was not required to make findings is not altered by the mother's arguments regarding *Reavis* or divided custody.

## C. Weight of the Evidence

■ [¶ 18] It is also argued that the custody award was contrary to the weight of the evidence and failed to consider the mother's primary care giver role prior to the separation. It is well established that findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Pace*, at ¶ 10; *Reavis*, 955 P.2d at 431; *Resor*, 987 P.2d at 148. Likewise, an abuse of discretion is present when a material factor deserving significant weight is ignored. *Id.*

[¶ 19] Except for a Department of Family Services (DFS) report, the custody evidence consisted exclusively of trial testimony. As noted in the facts, the father testified on his own behalf and presented four additional witnesses. The mother also testified but presented no other witnesses. Both parties acknowledged that the mother had been the primary care giver for the children during the marriage. They both believed whoever was awarded custody should keep the family mobile home so the boys would not have to be moved. Both parties also testified DFS investigated the father in September of 1999 regarding a bruise he allegedly caused by spanking the child with ADHD. They also testified they attended counseling to improve their parenting skills and address marital issues as a result of this incident.[3]

[¶ 20] The testimony on the father's behalf indicated the mother left the family in April of 2000 on her own initiative due to alleged marital problems and her general feeling that she no longer wanted to be a full-time parent. While in their father's custody, the children did as well as, and possibly somewhat better than, they had prior to the separation. The father had a stable five-year employment history and was purchasing the family mobile home from his employer through paycheck deductions. The father's stepmother testified she lived very close to the father and would be able to assist with the children. The babysitter testified he regularly watched the boys and it was his general impression the father did a reasonable job of parenting and exerted better control of the children than the mother did. The father acknowledged that the children spent significant time in the mother's care as a babysitter because of his long work hours.

[¶ 21] The mother testified she left the family home in order to care for her ill mother and, now that her brother had been "released from the Boys' School," he could take on this responsibility. At the time of the temporary custody hearing, the mother had a job with irregular hours that required some evening work, but, by the time of the divorce trial, she had started a new job with daytime hours. Prior to the separation, the mother had a very sporadic work history,

---

3. The DFS "Notice of Conclusions" reflected that, although the allegations had been substantiated at low risk, the father's name would not remain on the Child Abuse/Neglect Central Registry. The notice also indicated the case was opened in order to provide the services the father had requested. This is presumably a reference to the counseling the father and the mother received.

**1246**

including multiple minimum wage jobs, which she stated was the result of accommodating her child care responsibilities. The mother also testified regarding alleged instances of the father's inadequate care of the boys, including his failure to provide school lunches or lunch money, make or keep dentist appointments, and ensure medication prescriptions were refilled.

[¶ 22] The trial judge is in the best position to assess the credibility of the witnesses and weigh their testimony. *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo.1998); *Goff v. Goff,* 844 P.2d 1087, 1092 (Wyo.1993). This entire case revolved around the assessment of credibility and the proper weight of testimony. The evidence was relatively evenly distributed. However, it is conceivable that the district court weighed the evidence that the mother essentially abandoned the family and had a recent history of personal and employment instability against her former role as primary care giver. It could have also weighed the evidence with regard to the father's parenting skills, employment stability, and conduct during the period of temporary custody to determine he was the more fit and stable parent. Such an evaluation would require the assessment of the witnesses' credibility and the weighing of conflicting testimony. A process of this kind could readily swing the balance toward one party despite there being a material factor in favor of the other party. Therefore, we cannot conclude the mother's former role as primary care giver, or any other material factor, was ignored. *Reavis,* 955 P.2d at 431; *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo. 1996), *abrogated on other grounds by Vaughn,* 962 P.2d at 151. Due to the nature of the evidence this case presents, we must rely on the fact finder's determinations and accord them considerable deference. *Raymond,* 956 P.2d at 332; *Brown v. State,* 944 P.2d 1168, 1170 (Wyo.1997). We hold the custody award to the father is not against the great weight of the evidence and does not constitute an abuse of discretion.

[¶ 23] Affirmed.