2006 WY 68

**TW, Appellant (Respondent),**

v.

**BM, Appellee (Respondent).**

**No.  C–05–8.**

Supreme Court of Wyoming.

June 1, 2006.

Representing Appellant: Gibson Sean Benham of Casper, Wyoming.

Representing Appellee: Kyle R. Smith of Worrall, Greear & Smith, P.C., Worland, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] In this appeal, TW (mother) challenges an order granting BM's (father's) petition to modify custody of their son. Mother contends that, contrary to her constitutional right to travel, the district court modified custody based solely on her various relocations. We will affirm.

## ISSUE

[¶ 2] TW presents one issue for our review:

Whether the trial court abused its discretion by ordering a modification of custody based on relocations by mother in light of the mother's constitutional right to travel?

## FACTS

[¶ 3] Because there is no transcript from the district court's hearing, we must derive this statement of facts from the pleadings and orders. The parties' son was born February 3, 1996. The parties never married each other. In March of 1998, the Wyoming Department of Family Services filed a "Petition to Establish Paternity and Support." In July of 1998, the district court entered a "Judgment and Order of Paternity and Support by Default." By that order, BM (father) was adjudicated the natural father of the parties' son. Mother was awarded primary physical custody of the parties' son, subject to the right to reasonable visitation by father. No specific visitation schedule was established. Father was ordered to pay monthly child support of $200.

[¶ 4] Over the next several years, father filed three petitions to modify custody. In June of 2002, father filed a "Petition for Modification and Contempt of Court." Among other things, father's petition alleged

that, since the 1998 paternity judgment, (1) mother had moved with son to Las Vegas, Nevada; (2) mother changed addresses frequently since her relocation to Las Vegas; (3) son attended school only "sporadically"; (4) mother had thwarted father's attempts to exercise his visitation rights; and (5) father had married and established a stable home. On August 2, 2002, the district court held a hearing on father's petition. At that hearing, the parties informed the district court that they had agreed to settle the matter. Under the parties' agreement, custody was not modified. However, the parties established a specific visitation schedule for father: alternating holidays, six weeks in the summer, telephone visitation, and other visitation as agreed upon. The district court instructed the parties to submit an order approving their settlement, but no such order was ever entered.

[¶ 5] In January of 2003, father filed an "Amended Petition for Modification of Child Custody." In addition to reasserting the allegations contained in the initial petition, father's amended petition alleged, among other things, that (1) mother continued to change addresses and telephone numbers without notifying father; and (2) son continually stayed overnight at the homes of individuals other than mother. The district court ordered the parties to mediate the dispute. The record does not reveal what resulted from the mediation, but it is apparent that primary legal custody of son remained with mother.

[¶ 6] The present action began on September 29, 2004, when father filed a "Petition for Modification of Custody." This petition chronicled mother's repeated relocations to, and in, Wyoming; Las Vegas, Nevada; and Bozeman, Montana. Significantly, the petition alleged:

> During the period of time including the school years 2001/2002 and 2002/2003, the parties' minor child has been enrolled or re-enrolled about thirteen (13) different times in schools and school districts in three different states as a result of the overall instability and irresponsibility of Mother.

[¶ 7] On February 8, 2005, the district court held a hearing on father's petition. Mother appeared *pro se* at the hearing. The hearing was not reported. Following the hearing, the district court entered its "Order Modifying Custody & Establishing Visitation & Child Support." In that order, the district court awarded father sole custody of the parties' son. A visitation schedule was established for mother, and she was ordered to pay monthly child support of $762.44.

[¶ 8] In its order modifying custody, the district court determined that father had "met his burden of proving that a substantial and material change in circumstances has occurred affecting the best interest of the parties' child." In its findings of fact, the district court wrote:

1. The parties' minor child has a loving relationship with both parties;

2. The stability and home environment of [father] is such that he is in a better position to provide adequate care for the parties' minor child;

3. The instability of [mother] has been proven through her testimony regarding the many residential and educational changes regarding the parties' minor child while the parties' minor child has been in her primary care and custody since the date of the last hearing regarding custody of the parties' minor child on July 31, 2002;

4. [Father] persuasively proved to the court through his testimony and the testimony of his wife … that his current residential environment is stable and capable of sustaining a safe, loving and productive home environment for the parties' minor child;

5. Each of the parties is willing to accept the responsibilities of parenting, however, [mother's] erratic schedule of leaving the parties' minor child with [father] indicated to the court an unacceptable willingness to pass this responsibility to [father] at her convenience;

6. [Father] has willingly accepted and performed the responsibilities of parenting on several occasions at the convenience of [mother];

7. [Father's] demonstrated stability and responsibility regarding the parties' minor

child's best serves the continued maintenance and strengthening of his parenting relationship with the [mother] as well as with the parties' minor child:

8. [Father] has attempted to maintain contact and communication with the parties' minor child despite the regular changes of residence and education instigated by [mother] without notice to [father]:

9. [Father] is better able to facilitate and develop regular communication between the parties and the parties' minor child;

10. [Father] is better able to care for the safety, security and support of the parties' minor child;

11. It is in the best interests of the parties' minor child * * * * * that [father] be awarded sole custody of the parties' minor child[.]

Mother then filed this timely appeal.

### STANDARD OF REVIEW

[¶ 9] Modification of custody is governed by Wyo. Stat. Ann. § 20–2–204 (LexisNexis 2005), which provides in pertinent part:

§ **20–2–204. Enforcement and modification.**

. . . .

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

▮ [¶ 10] In reviewing such a matter, our standard of review is well established:

"The party seeking a modification of the custody provisions of a divorce decree has the burden of showing that a material and substantial change of circumstances has occurred, after the entry of the initial de-

cree, and that modification is in the best interests of the children." *Clark v. Alexander,* 953 P.2d 145, 150 (Wyo.1998). This court will not interfere with the trial court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. *Id.* We recently clarified the definition of an abuse of discretion when we stated the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998); see also *Pace v. Pace,* 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (Wyo.2001). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.*

*Fergusson v. Fergusson,* 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo.2002).

### DISCUSSION

**A. Substantial change of circumstances; constitutional right to travel**

▮ [¶ 11] Mother contends that the district court abused its discretion in finding a substantial change in circumstances. She claims that the district court's decision was based solely on her relocations and is thus in direct conflict with her constitutional right to travel. She argues that relocations, by themselves, may not serve as a basis for finding a substantial change of circumstances.

[¶ 12] Recently, we summarized the law governing mother's claim:

To summarize, our precedent is quite clear that relocation, by itself, cannot be a substantial and material change in circumstances sufficient to justify reopening a custody order. That precept is also applicable to any factors that are derivative of relocation. What Mother has failed to acknowledge in her argument, however, is that our precedent does not preclude the district court from considering the effects of relocation on the children so long as there is some other circumstance that is "sufficiently deleterious to the welfare of

the children that by itself ... would serve as a substantial and material change in circumstances even in the absence of a relocation." [*Watt v. Watt*, 971 P.2d 608, 617 (Wyo.1999) ]; see [*Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995) ] (Where a custody order was properly reopened because both parties asserted that joint custody was not working, district court could have reasonably concluded that factors derivative of the relocation could have contributed to parties' inability to agree and communicate.). Furthermore, our cases stress that the rule set forth in *Love* and its progeny is predicated upon the motivation for the relocation being in good faith. [*Love v. Love*, 851 P.2d 1283, 1288–89 (Wyo.1993) ] ("So long as the court is satisfied with the motives of the custodial parent in seeking the move ... removal should be granted."); *Watt*, 971 P.2d at 614 ("*Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the non-custodial parent, is not a substantial and material change in circumstances.").

Here, a review of the record shows that the district court did not abuse its discretion by considering Mother's numerous relocations since the parties' divorce. The court's Decision Letter sets forth various factors independent of the relocations that could establish the existence of a substantial and material change in circumstances justifying the decision to reopen the custody order[.]

*Harshberger v. Harshberger*, 2005 WY 99, ¶¶ 12–13, 117 P.3d 1244, 1250–51 (Wyo.2005).

[¶ 13] Relying on these principles, mother contends that father did not establish that her various relocations had any adverse consequences on son. To the contrary, mother asserts that son is excelling in school. Mother is correct that the district court did not make any specific written findings that mother's relocations had deleterious effects on son. At the same time, there is nothing in the district court's findings that suggests the district court relied on mother's relocations, standing alone, to justify the change in custody. To the extent that the district court's findings of fact address mother's relocations, the district court found that mother's instability was proven through her testimony regarding the many residential and educational changes regarding son. Thus, it is apparent that the district court focused on the instability such relocations created, not on the relocations themselves.

[¶ 14] Certainly, it would be helpful to this Court's review if the district court had provided more detailed findings of fact regarding the substantial change in circumstances. Indeed,

[w]e have repeatedly implored trial courts, when exercising their discretionary power in custody matters, to place the circumstances and factors which were crucial to their custody determinations on the record. If they did so, the reviewing court could better understand and evaluate the soundness of their decisions. See *Produit v. Produit*, 2001 WY 123, ¶¶ 10–13, 35 P.3d 1240, ¶¶ 10–13 (Wyo.2001); *Pace*, 2001 WY 43, ¶ 15, 22 P.3d 861; *Reavis v. Reavis*, 955 P.2d 428, 431–32 (Wyo.1998). We continue to encourage trial courts to rely on their discretionary power to make a record of the critical circumstances and factors which constitute the foundation of a custody award. *Produit*, 2001 WY 123, ¶ 10, 35 P.3d 1240. However, except in instances involving unconventional custody approaches, trial courts are not required to do so. We have placed the onus on the parties to request findings of fact and conclusions of law pursuant to W.R.C.P. 52(a). *Id.; .Pace*, 2001 WY 43, ¶ 16, 22 P.3d 861; *RDS v. GEMN (In re MS )*, 9 P.3d 984, 986 (Wyo.2000). Neither party made such a request and, therefore, cannot be heard to complain about the absence of formal findings. *Resor v. Resor*, 987 P.2d 146, 148 (Wyo.1999).

*Fergusson*, ¶ 15, 45 P.3d at 645–46. Here, neither party requested detailed findings of fact. With no such request, mother does not complain that the findings are inadequate. More importantly for purposes of this case, there is nothing in the findings of fact that suggests the district court, as mother claims,

relied solely on mother's relocations to modify custody.

[¶ 15] If the hearing had been reported, we would review the record to determine if mother's relocations had an adverse impact on son. However,

[w]hen this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. *Capshaw v. Schieck*, 2002 WY 54, ¶ 21, 44 P.3d 47, ¶ 21 (Wyo.2002). The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo.1996); *Combs v. Sherry–Combs*, 865 P.2d 50, 55 (Wyo.1993); and see *Wood v. Wood*, 865 P.2d 616 (Wyo. 1993) (dismissing appeal for lack of record, rather than affirming).

*Harshberger*, ¶ 3, 117 P.3d at 1246–47 (quoting *Burt v. Burt*, 2002 WY 127, ¶ 7, 53 P.3d 101, 103 (Wyo.2002)). Without a transcript to review, we must accept the district court's finding that father established a substantial change in circumstances. We will not assume the district court violated the law.

[¶ 16] In addition, as in *Harshberger*, there are other findings, independent of mother's relocations that support the district court's determination that there was a substantial change in circumstances. See *JRS v. GMS*, 2004 WY 60, ¶ 12, 90 P.3d 718, 723–24 (Wyo.2004). The district court found that mother's "erratic schedule of leaving the parties' minor child with [father] indicated to the court an unacceptable willingness to pass this responsibility to [father] at her convenience." Also, the district court found that father "has willingly accepted and performed the responsibilities of parenting on several occasions at the convenience of [mother]."

[¶ 17] As for mother's assertion that son is excelling in school, the record simply does not support mother's assertions. As noted, there is no transcript from the hearing, and the designated record does not otherwise support mother's contentions.

[¶ 18] Mother also argues that the district court should not have relied on evidence that pre-dates the parties' 2002 stipulation settling father's first petition to modify custody. Mother contends that her relocation to Las Vegas cannot be considered a change of circumstances because she already lived there when father filed his first petition to modify custody. We recently rejected a similar argument in *Harshberger*, where we wrote:

In a related argument, Mother contends that the district court erred when it considered relocations that occurred before the court modified the parties' custody and support order on July 8, 2003. Similarly, she claims that the. court also considered employment changes that occurred before this date....

....

... We recently held that [W.S. § 20–2–204(c)] prohibits consideration of pre-divorce evidence when there is a determination of whether there has been a substantial change in circumstances but that it did not limit the court's consideration of such information when making a determination of the children's best interest. *Selvey v. Selvey*, 2004 WY 166, ¶ 18, 102 P.3d 210, ¶ 18 (Wyo.2004). As noted above, there are independent grounds in the record for finding a material change of circumstances without considering either the relocations or Mother's employment history. Once material changes of circumstances have been found, the district court could consider evidence of Mother's relocations and employment history under our decision in *Selvey*. We also note that the July 8, 2003 order was only concerned with visitation, not custody. Mother does not explain why the visitation order should act as a bar on the evidence the court could consider when determining custody. The original custody order set forth in the parties' 1999 divorce decree was still in effect at the time this proceeding was commenced. A review of the Decision Letter indicates that all of the

events cited by the court relating to Mother's relocations and employment occurred after the divorce decree was entered. No matter how one views it, the district court did not abuse its discretion in considering this evidence when determining the best interests of the children.

*Harshberger*, ¶ 14–15, 117 P.3d at 1251–52.

[¶ 19] Likewise, here, the parties' 2002 stipulation altered only visitation, not custody. Thus, the initial custody order, entered in 1998, was still in effect when father filed the present petition to modify custody. Therefore, the 1998 order was "the order in question" pursuant to § 20–2–204(c). Under the circumstances, we must reject mother's claim.

[¶ 20] On this record, we cannot conclude that the district court committed any error in finding a substantial change in circumstances.

## B. Best interests of the child

[¶ 21] In a one-paragraph argument, mother claims it is in the child's best interests that primary physical custody remain with her. She asserts that she is the primary caregiver for son. While acknowledging her multiple relocations, mother contends that the relocations have been in an effort to improve her economic condition. She states that she is now able to provide a financially stable environment. She also asserts that custody should not be modified simply because father is inconvenienced in exercising visitation.

[¶ 22] Mother's argument depends upon a review of the evidence presented at the district court hearing. Without a transcript from that hearing, this Court is unable to ascertain whether or not mother's assertions are accurate. Instead, we must again accept the district court's findings on this issue.

[¶ 23] Affirmed.