252 P.3d 942 (2011)
2011 WY 66
In the Matter of the PATERNITY OF JWH, Minor Child,
LRD, Appellant (Respondent),
v.
DAH, Appellee (Petitioner).
No. S-10-0167.
Supreme Court of Wyoming.
April 14, 2011.
*944 Representing Appellant: Deborah Ford Mincer, Cheyenne, WY.
Representing Appellee: James A. Eddington, Torrington, WY.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
HILL, Justice.
[¶ 1] LRD (Mother) challenges the district court's order awarding DAH (Father) primary custody of the parties' toddler son, JWH. Among seven issues, Mother's contentions include that the district court failed to consider that she was the primary caretaker and that Father physically abused Mother on one occasion. We will affirm in part and reverse in part and remand this matter to the district court for further proceedings consistent with this opinion.

ISSUES
[¶ 2] Mother raises seven issues before this Court:
1. The trial judge erred when he failed to weigh the "primary caretaker" factor against the statutory factors of Wyo. Stat. Ann. § 20-2-201(a) which he chose to apply.
2. The trial judge erred in his statutory interpretation of the relative competency and fitness factor where allegations against Mother were unrelated to child's welfare.
3. The trial judge erred in judging Mother's handling of visitation under the statutory factors when Father had no legal rights to visitation prior to entry of the order adjudicating his paternity.
4. The trial judge erred by failing to consider Father's physical abuse under Wyo. Stat. [Ann.] § 20-2-201(c).
5. The trial judge erred by admitting evidence of claimed misconduct unrelated to the child.

*945 6. The trial judge committed an abuse of discretion in awarding custody to Father.
7. The trial judge erred by offsetting Father's payments on his debts, honoring a claimed agreement in lieu of child support, and awarding only four months of child support to Mother.
Father states the issues more succinctly:
1. Does sufficient evidence exist in the record to support the trial court's decision on custody and child support?
2. Is this appeal lacking in reasonable cause so as to result in attorney fees and damages to [Father] pursuant to W.R.A.P. 10.05?

FACTS
[¶ 3] In 2005, the parties began a relationship which resulted in the birth of a son in 2008. The parties broke up in 2009, and Father moved out of their Torrington apartment. Their son remained in Mother's care, and the parties agreed that Father would pay utilities and one-half of the apartment rent in lieu of child support. Father made these payments until November of 2009.
[¶ 4] In December of 2009, Father filed a Petition to Establish Paternity, Custody, and Support. The parties agreed on a visitation schedule, but Father's new work routine at the Medium Correctional Institution in Torrington made the agreed-upon visitation difficult. Father's visitation with his son was thus limited by his own work schedule.
[¶ 5] A bench trial was held in April of 2010. The parties stipulated that Father was indeed the child's father, and visitation and custody were the only issues remaining. At the end of trial, the district court awarded Father primary custody of the child, subject to Mother's visitation. The court implemented a plan whereby, during the summer of 2010, the parties would exchange visitation working up to a weekly basis. On July 24, 2010, Father became primary custodian, and Mother was ordered to begin paying child support on August 1, 2010. This appeal followed.

STANDARD OF REVIEW
[¶ 6] Our standard of review regarding custody issues is well-established:
"[C]ustody, visitation, child support, and alimony are all committed to the sound discretion of the district court."
This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

Durfee v. Durfee, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo.2009) (citations omitted).
Furthermore,
It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle. Resor v. Resor, 987 P.2d 146, 148 (Wyo.1999), quoting Reavis v. Reavis, 955 P.2d 428, 431 (Wyo.1998).

Testerman v. Testerman, 2008 WY 112, ¶ 8, 193 P.3d 1141, 1144 (Wyo.2008).
A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision.... Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a *946 material factor deserving significant weight is ignored.
Blakely v. Blakely, 2009 WY 127, ¶¶ 6-7, 218 P.3d 253, 254-255 (Wyo.2009) (citing Parris v. Parris, 2009 WY 44, ¶ 15, 204 P.3d 298, 303 (Wyo.2009)).

DISCUSSION
[¶ 7] Although Mother separates her overall argument into seven distinct issues, we believe she has one issue with subparts. Mother argues generally on appeal that the district court abused its discretion when it awarded custody of the parties' minor child to Father. First, Mother contends that the district court failed to give proper consideration to the fact that she was the primary caretaker of the child and failed to mention that fact in its oral findings.
[¶ 8] We have considered this very issue before,
[B]y once again noting that the district court's responsibility for fashioning family relationships through custody determinations encompasses one of the most difficult and demanding tasks assigned to a trial judge. "This life-altering decision is perhaps most exacting in cases such as this, where it is apparent that both parents love their children and are fit and competent to have custody." Beyond the emotional and family turmoil that attends custody disputes, adding to the district court's difficulty is that every case involving custody issues presents a different situation and set of facts. Consequently, there are no bright line rules to easily apply when making a custody decision. Instead, every case requires a careful weighing of the relevant factors. The district court must look to the unique family relationships of each case in order to reach a resolution that is in the best interests of the children in that particular family. The law, recognizing the different intricacies and circumstances of each case, affords the district court wide discretion when fashioning custody and visitation provisions.
Pahl v. Pahl, 2004 WY 40, ¶ 9, 87 P.3d 1250, 1253 (Wyo.2004) (citations omitted).
[¶ 9] When exercising its wide discretion in this area, the ultimate goal for the district court is a reasonable balance of the rights and affections of each parent, with paramount consideration being given to the welfare and needs of the children. Pahl, ¶ 10, 87 P.3d at 1253. In making its custody determination, the district court is charged with the following:
§ 20-2-201. Disposition and maintenance of children in decree or order; access to records.
(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;

*947 (ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2009). Guided by these mandatory statutory factors and any others that the district court deems relevant, the district court must fashion a custody award. Pahl, ¶ 10, 87 P.3d at 1253. Depending on the case, different factors will present a greater need for emphasis. Additionally "a process of this kind could readily swing the balance toward one party despite there being a material factor in favor of the other party." Produit v. Produit, 2001 WY 123 ¶ 22, 35 P.3d 1240, 1246 (Wyo. 2001). The one constant, however, is that the resolution must be in the best interests of the child. Stonham v. Widiastuti, 2003 WY 157, ¶ 14, 79 P.3d 1188, 1193 (Wyo.2003).
[¶ 10] For our purposes, when determining whether the district court weighed all the relevant factors, we must rely upon the court's articulation of the factors it considered and how those factors support its conclusions.
Because the district court is relying on its discretionary power, the district court should place on the record the circumstances and factors that were crucial to its determination, as well as its reasoning. That way, counsel and the reviewing court will know and be in a position to evaluate the soundness of the district court's decision. We have repeatedly implored trial courts to place such information on the record so that we may conduct a meaningful review. We continue to strongly encourage and desire such findings. Certainly such findings would have been enormously helpful in our review of this case because the decision letter provided a somewhat sparse explanation of the district court's reasoning.
Nevertheless, unless requested, district courts are not required to make specific findings for each statutory factor if "consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order." [Fergusson v. Fergusson, 2002 WY 66, ¶ 16, 45 P.3d 641, 646] (quoting Produit, ¶ 12 [35 P.3d at 1243-44]). Therefore, "consistent with Produit, we may look to the trial transcripts to determine whether the court's considerations are adequately set forth and comply with § 20-2-201(a)." Fergusson, ¶ 17 [45 P.3d at 646].
Pahl, ¶¶ 11-12, 87 P.3d at 1254.
[¶ 11] As we recognized in Pahl, in Raymond v. Raymond, 956 P.2d 329 (Wyo.1998), we acknowledged that the other factors can, in some circumstances, outweigh placing custody with the primary caregiver:
Although the trial court considered the wife's role as a primary caregiver in determining what was in the best interests of the child, the other factors which were considered by the trial court ultimately weighed in the husband's favor; i.e., the husband's willingness to get help through counseling to improve his parenting abilities, the emotional stability he could offer the child, and the likelihood that he would promote an ongoing relationship between the child and the wife.
Id., 956 P.2d at 332. Thus, while primary caregiver status is a weighty consideration, it is not determinative. Rather, the primary caregiver is one factor among the many that the district court considers. Other factors may outweigh the primary caregiver status.
[¶ 12] Here, Mother argues that the district court failed to consider that she was the primary caregiver. Mother notes that the court did not mention that factor in its oral findings or in its final order. Mother did not request that the court make findings specifically regarding the primary caregiver provision of the statute. Yet, we note that the court began its discussion of the factors it considered when making its determination by stating, "... using the statutory factors for custody, the court finds that the child, apparently, has a good relationship with each parent."
I don't find anything inappropriate or lacking in anything I heard between the parents and the child.
I find that the parents, the two of you, are capable of providing appropriate care for the child, probably equally.
*948 [¶ 13] While we decline to address Mother's contention that this Court should adopt a primary caregiver doctrine, we do echo our previous cases that indicate how much weight the primary caregiver status does carry. Given the foregoing remarks, in which the district court does not mention the primary caregiver status in either its oral ruling or order as to how it weighed against the other factors considered by the court, we must conclude that a remand is in order for the court to put on record its consideration, if any, of the primary caregiver status. We consider this a crucial part of this specific case, and while we will not reweigh the evidence considered by the district court on appeal, we must be apprised of the entire thinking it used. See Produit, ¶ 13, 35 P.3d at 1244 ("... remand may be necessary if the consideration of § 20-2-201(a) factors is not patent in the district court record.").
[¶ 14] Next, Mother contends that the district court erred in interpreting the statutory factor of the relative competency and fitness of each parent. Mother argues that the focus should have been on parental fitness, not moral fitness in reference to the court's consideration of her DUI conviction and later probation violation.
[¶ 15] Regarding this factor, the district court stated:
The next factor is the relative fitness and competence of each of the parties. We already talked about the alcohol. Each of you should be able to grow up and be self controlled. The court is concerned about the child being transferred for care by [Father] without having a diaper change; and [Mother], I am concerned about your violation of the City Court order.
"I heard some complaints about [Mother]'s housekeeping. The photographs that I saw shows [sic] some messy house. How much that relates to harmful circumstances or not is hard to tell. I heard some complaints of injuries that the child received when in [Father]'s care. Boy, I do not find that thosethat there was evidence on those injuries that there was a lack of competence or fitness by [Father] to care for the child; and, to the contrary, I am concerned that those kind of accusations begin looking like there is paranoia, excessive concern."
[¶ 16] Given the court's findings, we find Mother's claim to be without merit. We could reflect on what is and is not moral behavior, or what is or is not applicable to being a competent parent, but to do so in this instance is not necessary. We review a trial court's findings and conclusions in that regard as an exercise of its sound discretion; we will defer to them unless they are clearly abusive. Nuspl v. Nuspl, 717 P.2d 341, 345 (Wyo.1986). We note the trend in some states, including Montana, where "[c]ase law... has established a line of precedent moving away from the policy of admitting evidence of misconduct which did not affect the relationship of a custodian with the child." In re Marriage of Cole, 224 Mont. 207, 729 P.2d 1276, 1281 (1986). Here, the district court heard ample testimony about the conduct of the parents, addressed the parents in the correct manner, and thus, in our opinion, weighed this factor soundly as well. The trial judge is in the best position to assess the credibility of the witnesses and weigh their testimony. Raymond, 956 P.2d at 332; Goff v. Goff, 844 P.2d 1087, 1092 (Wyo.1993). This entire case revolved around the assessment of credibility and the proper weight of testimony. The district court's weighing of the above-described evidence was within the ambit of its broad discretion.
[¶ 17] Next, Mother contends that the judge improperly faulted her for not allowing Father visitation during the pendency of this action and submits that until there was an adjudication of paternity, Father had no right to visitation. The district court made adequate findings on this issue, and stated:
Here I find that at times [Mother], indeed, was reticent and reluctant to permit visitation. I also find that [Mother], at least in argument today and in the evidence today, minimizes the importance of the Father's role in this child's life and exaggerates perceived negatives....
I find that [Father] is the parent more willing to relinquish care to the other parent and to foster a relationship between both parents.
*949 [¶ 18] We do not find Mother's short argument on this particular issue to be persuasive. Essentially, she is attempting to play both sides of the coinby that, we mean to say that although paternity had not been adjudicated, Mother acknowledged that Father was, in fact, the minor child's father, and did not permit visitation even though it would not have been inconvenient for her to have done so. Furthermore, the district court's decision was not based solely upon this factor, and it even appears that the court did not give this particular factor significant weight, in that its discussion moved quickly from the parties' past visitation issues to Mother's minimization of Father's role in the child's life. The district court did not abuse its discretion in this instance.
[¶ 19] Mother's fourth issue is that the court failed to consider Father's physical abuse of her in one instance of domestic violence. Mother points out that the court neglected to mention the violence in its oral ruling or subsequent order.
[¶ 20] In cases where "spousal abuse" or "child abuse" is present, the trial court is required to consider such evidence "as being contrary to the best interest of the children." Wyo. Stat. Ann. § 20-2-201(c) (LexisNexis 2009). In those cases, the trial court is mandated by statute to fashion custody and visitation orders to provide for the best interests of the children and to protect the spouse and children. In Buttle v. Buttle, 2008 WY 135, ¶ 25, 196 P.3d 174, 180 (Wyo.2008), we concluded that "[w]hile evidence that spousal abuse occurred is contrary to the best interest of the child, such evidence must be considered along with all of the other factors." Although our prior statements indicate that the trial court is not mandated to consider each factor orally on the record unless specifically requested to do so, when an issue such as spousal abuse is on the table, we have also stated that an "abuse of discretion is present `when a material factor deserving significant weight is ignored.'" Reavis v. Reavis, 955 P.2d 428, 431 (Wyo.1998).
[¶ 21] During trial, Mother testified that while the child was in her home, Father became upset, put her in a choke hold, pushed her face into the bed and damaged her glasses, and finally, punched her in the stomach. A picture of Mother's bruised stomach was admitted. Father denied that he hit and bruised Mother, but he did admit that he apologized to her for the incident. Neither the district court's oral ruling nor final order mentioned this incident.
[¶ 22] Although it may have taken this information into account when making its decision, the district court did not make any note as to whether it considered this evidence, let alone the weight it carried in the final decision. Accordingly, we must remand to the district court, thus according it an opportunity to place on the record its findings with respect to this matter.
[¶ 23] Mother also argues that the district court erred in admitting evidence of her claimed misconduct that was unrelated to the well-being of the child. Specifically, Mother argues that the DUI and alleged probation violation were not relevant because those acts were not related to her ability to care for the child.
[¶ 24] As we stated above, the one constant in child custody cases is that the resolution must be in the best interests of the child. Stonham, ¶ 14, 79 P.3d at 1193. See also Lopez v. Lopez, 2005 WY 88, ¶ 13, 116 P.3d 1098, 1101 (Wyo.2005) ("Additionally, the evidence established that alcohol negatively impacted Mother's relationship with her children."). Although Mother argues that her DUI was absolutely unrelated to her child, in that the child was not at the bar while she was drinking, nor in the car when she received her citation, we do not agree with Mother's assertion that evidence of such conduct cannot be weighed in child custody matters. The district court was obviously not satisfied at trial of Mother's assurances that the DUI had "nothing to do" with her child. This case hinges on what is best for the child. The district court's findings with respect to this matter were not an abuse of discretion.
[¶ 25] Next, Mother argues generally that the custody award is contrary to the evidence and an abuse of discretion by the district court. She specifically mentions the following in support of her argument that the *950 court erred in finding Father capable of providing appropriate care for the child: Father did not provide child support; Father cut off Mother's utilities; Father battered her; the child fell down some stairs while in the care of Father, requiring a trip to the emergency room; Father is "fronting" this case for his parents so that they can have better access to the child; and Father does not change the child's diaper enough. Mother also complains that the district court erred in finding that she was reluctant to provide visitation without a court order.
[¶ 26] As we have consistently articulated, "This Court ... does not reweigh evidence.... Instead, we view the facts in the light most favorable to the prevailing party." Hayzlett v. Hayzlett, 2007 WY 147, ¶ 8, 167 P.3d 639, 642 (Wyo.2007). Certainly, reasonable minds could reach different conclusions about which parent's custody would be in the best interests of the children. Id., ¶ 13, 167 P.3d at 643. Seldom, if ever, does a court have a choice between a parent who is all good on one side and a parent who is all bad on the other side. "The matter of awarding custody is a comparative proposition wherein the court exercises its best judgment and discretion and awards custody to one parent or to the other, according to what the court thinks is for the best interest and welfare of the children." Blakely, ¶ 17, 218 P.3d at 257 (citing Hayzlett, ¶ 13, 167 P.3d at 643). "This Court will accede to the district court's determination of the admissibility of evidence unless the court clearly abused its discretion." Blakely, ¶ 17, 218 P.3d at 257 (citing Aragon v. Aragon, 2005 WY 5, ¶ 21, 104 P.3d 756, 762 (Wyo.2005)). Regarding Mother's specific claims, the trial court made extensive findings and, after our review of the record, we do not find it to be an abuse of its discretion.[1]
[¶ 27] Finally, Mother challenges the trial court's handling of child support in this case. She contends that, although the parties agreed that Father would pay rent and utilities in lieu of child support, such an agreement is not valid because support must be paid for the child. Mother argues that Father should be ordered to pay child support retroactive to the child's birth, except for the eight months the parties lived together.
[¶ 28] In Ellison v. Walter, 834 P.2d 680, 684-85 (Wyo.1992), we stated:
[T]he duty of a natural father to support his child begins at [his child's] birth. The establishment of paternity by judicial decree is merely a procedural prerequisite to enforcement of the duty of support owed to the child: it does not create, but only defines the preexisting duty.
....
From our review of relevant statutory provisions, we conclude that a district court possesses the authority to issue support orders retroactive to the date of a child's birth in paternity/support actions initiated by a state for the reimbursement of public assistance. The guiding principles in each instance are to promote the welfare of the child and to serve the ends of justice. We are persuaded that neither principle is generally served by failing to acknowledge a father's duty to support his child from the date of birth. Consequently, retroactive child support orders should be the rule, rather than the exception. The burden is accordingly placed upon the father to demonstrate to the district court why a retroactive child support order should not issue in a particular case.
[¶ 29] We have applied these principles over the years, as in Thomas v. Thomas, 983 P.2d 717, 721 (Wyo.1999), where we noted their importance in determining the child support obligation of a parent "who has abandoned his child and contributed nothing to the support of that child since birth." There, the district court saw fit to award support retroactively to the date of the child's birth.
*951 [¶ 30] This case is no exception in the application of the foregoing principles, but differs in result. Here, the district court made specific findings regarding child support. It stated:
With respect to child support, the Court specifically finds that for much of this child's life, the parties shared expenses and were together, either living together or financially connected; and the Court finds it inappropriate for [Father]or [Mother] to argue that although they lived together, had joint accounts, split income and expenses with each other, that now she is also entitled to child support for that period of time.
[¶ 31] Given the district court's wide discretion as to child support matters, as well as our review of the testimony and record in this case, we do not find there to be an abuse of discretion as to the denial of retroactive child support. As the court said, the parties' lives and finances were intertwined for a large portion of the child's life, and Father continued to contribute to those expenses even after the parties split up. See KC v. KJM (In re IC), 971 P.2d 603, 608 (Wyo. 1999) (within district court's discretion to limit retroactive support where legitimate basis exists to do so). Accordingly, we do not find this decision to be "outside the bounds of reason under the circumstances."

CONCLUSION
[¶ 32] The Order of the district court is affirmed in part and reversed in part. That portion of the district court's order determining child support is affirmed. Also affirmed are the district court's findings and conclusions regarding the competency and fitness of each parent. However, we remand this matter to the district court for reconsideration of the "primary caretaker provision" and the spousal abuse allegations and how those matters should be weighed in the determination of which parent should be the primary custodian.
NOTES
[1] Father suggests that this argument is unreasonable, lacks citation to legal authority, and should thus be subject to sanctions under W.R.A.P. 10.05. While we do not find Mother's argument persuasive, we also do not find this case to be an appropriate one for sanctions. Mother's brief was not so lacking in cogent argument or pertinent authority that it constituted that rare circumstance where sanctions are needed. See Aragon v. Aragon, 2005 WY 5, ¶ 31, 104 P.3d 756, 765 (Wyo.2005); see also Maher v. Maher, 2004 WY 62, ¶ 18, 90 P.3d 739, 745 (Wyo.2004).